The **SECURITY BANK OF MARSHALL-TOWN, IOWA, a Creditor of Robert V. Brown and Sue A. Brown, Debtors,** Appellant,

v.

**Donald F. NEIMAN, Appellee.**

No. 92–3443.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1993.

Decided Aug. 2, 1993.

James L. Goodman, Marshalltown, IA, argued, for appellant.

David J. Lynch, Des Moines, IA, argued, for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and SACHS,* Senior District Judge.

McMILLIAN, Circuit Judge.

This is an appeal from a final order entered in the United States District Court for the Southern District of Iowa[1] affirming an order entered in the United States Bankruptcy Court for the Southern District of Iowa[2] overruling appellant's objection to the trustee's distribution of funds. Security Bank of Marshalltown, Iowa (appellant), objected to the trustee's decision to treat certain post-petition debts as Chapter 13 administrative fees and expenses, thereby giving those debts a higher priority than the debt owed to appellant. For reversal, appellant argues the post-petition debts are not entitled to administrative claim status and that the bankruptcy court erred in refusing to subordinate the post-petition debts to that owed to appellant. We affirm the order of the district court.

## I.

The underlying facts are not disputed. Robert V. and Susan A. Brown (debtors), were farmers engaged in raising and selling hogs. On December 27, 1982, they filed a Chapter 13 bankruptcy petition. At that time their debt owed to appellant was $323,-645.52; however, the collateral securing the debt, primarily their hog herd and various notes, was valued at only $151,745.60. Debtors' Chapter 13 plan divided appellant's claim into secured and unsecured portions and was confirmed in August 1983. The allowed secured portion of appellant's claim, $168,-840.01, was originally to be paid over 5 years, but the period was later shortened to 3 years. The remaining unsecured portion of appellant's claim, $154,805.51, was to be paid

off at the same rate as other unsecured creditors—44.5¢ per dollar.

The secured portion of appellant's claim was fully paid off under the Chapter 13 plan and appellant was directed by the bankruptcy court to release its lien on debtors' assets which primarily consisted of their hog herd. *In re Brown,* No. 82–1857–C, slip op. at 3 (Bankr.S.D.Iowa Oct. 7, 1986) (*Brown*). Appellant objected, but the bankruptcy court ordered the release of the lien in order to protect all the unsecured creditors in the event debtors converted their Chapter 13 bankruptcy proceeding to Chapter 7. *Id.* at 6. The bankruptcy court provided that any new lien placed on the property formerly securing appellant's claim was to be "subordinated to a claim in favor of the estate" pursuant to 11 U.S.C. § 510(c) (1988)[3] in the event the case was converted from Chapter 13 to Chapter 7. *Id.*

During the pendency of their Chapter 13 proceedings, debtors were allowed to continue farming and as a result incurred more debts. When appellant's lien was removed from the herd of hogs, debtors sold the hogs for fair market value and used the proceeds to pay some of their post-petition creditors. Debtors then converted to a Chapter 7 bankruptcy proceeding. The Chapter 7 trustee brought adversary proceedings against these post-petition creditors to recover the payments they received as preferential transfers under 11 U.S.C. § 547(b).[4] The bankruptcy court employed § 547(c)(2), to allow a preference exception for payments made in the ordinary course of business within 45 days before the date of conversion to Chapter 7.

The adversary proceedings were settled by allowing the post-petition creditors to retain any monies received in the ordinary course of business within the 45–day exception. As a result, the trustee holds some $43,000.00,

* The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. Honorable Harold D. Victor, District Judge, United States District Court for the Southern District of Iowa.

2. Honorable Russell J. Hill, Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Iowa.

3. All statutory references to 11 U.S.C. are from the 1988 edition.

4. *Neiman v. Brown,* Adversary Proceeding No. 87–0109 (Bankr.S.D.Iowa, filed Nov. 7, 1988).

which he proposed to distribute by paying first the Chapter 7 administrative fees and expenses and then the Chapter 13 administrative fees and expenses, including the payments to the post-petition creditors as costs of preserving the estate under 11 U.S.C. § 503(b)(1)(A). Because of the limited assets, this meant appellant and other unsecured creditors would receive nothing because the administrative expense claims would be accorded a higher priority than appellant's unsecured claim pursuant to 11 U.S.C. § 507. Appellant filed an objection to the trustee's proposal.

The bankruptcy court decided that the claims were entitled to administrative claim status under 11 U.S.C. § 503(b)(1)(A). *Brown*, slip op. at 6. The bankruptcy court noted that appellant's only argument was that the costs and expenses at issue were not necessary to preserve the estate because the estate ceased to exist upon confirmation of the Chapter 13 plan. *Id.* Appellant did not address whether the costs and expenses were necessary to the preservation of the estate should the bankruptcy court hold the estate continued to exist after confirmation of the plan. *Id.* at 7.

The bankruptcy court decided that the Chapter 13 estate continued to exist after confirmation of the plan. The bankruptcy court thus allowed payment to the post-petition creditors as Chapter 13 administrative expense claims. *Id.* Appellant appealed to the district court, which affirmed the decision of the bankruptcy court. This appeal followed.

## II.

The only issue before this court is whether the Chapter 13 estate existed after confirmation of the Chapter 13 plan, which is when the debts were incurred. A survey of the cases addressing this issue reveals that there is a split in authority about whether a bankruptcy estate continues to exist after confirmation of a Chapter 13 plan. We start by agreeing with *In re Clark*, 71 B.R. 747, 749 (Bankr.E.D.Pa.1987), that "[w]e must confess that we find neither § 1327(b) or § 1306 to be models of clarity."

There is a tension between these two sections. Section 1306 provides that property of the estate includes all property the debtor acquires after commencement of the case but before the case is closed, dismissed, or converted. Section 1327(b) provides that upon confirmation of a plan under Chapter 13, all property of the estate is vested in the debtor. Courts differ based on their interpretation of 11 U.S.C. § 1306 and 11 U.S.C. § 1327. One line of cases holds that the Chapter 13 estate exists after confirmation and includes the debtor's property and earnings dedicated to the fulfillment of the Chapter 13 plan. *E.g.; In re Price*, 130 B.R. 259, 269 (N.D.Ill.1991); *In re Root*, 61 B.R. 984, 985 (Bankr.D.Colo. 1986). A second line of cases, however, holds that unless the Chapter 13 plan provides otherwise, confirmation of the Chapter 13 plan vests all property of the Chapter 13 estate in the debtor, ending the estate at that time. *E.g., In re Petruccelli*, 113 B.R. 5, 16 (Bankr.S.D.Cal.1990); *In re Mason*, 45 B.R. 498, 500 (Bankr.D.Or.1984), *aff'd*, 51 B.R. 548, 550 (D.Or.1985).

Appellant argues the better-reasoned position is that the Chapter 13 estate ceases to exist following confirmation of the plan. Appellant contends that, according to 11 U.S.C. § 1327(b), confirmation of the Chapter 13 plan vests property of the Chapter 13 estate in the debtor making such property "property of the debtor" and terminating the estate, unless the order of confirmation provides otherwise. Appellant argues that any other interpretation would make 11 U.S.C. § 1327(b) meaningless. Therefore, appellant argues that because no estate existed, the post-petition debts cannot be entitled to priority as Chapter 13 administrative expenses.

The trustee argues the bankruptcy court recognized the existence of·a split of authorities and properly sided with the line of cases holding that the bankruptcy estate continues to exist following confirmation of the plan. The trustee contends that so long as the estate continued to exist, the claims in question were administrative expenses of preserving the estate, and are entitled to administrative priority. In addition, the trustee argues there would be no equity in failing to pay the post-petition creditors, who extended credit

to debtors to further their attempts to keep their business going.

Most of the cases in this area have addressed either whether a debtor's earnings can be reached by creditors after confirmation or whether the automatic stay of 11 U.S.C. § 362 remains in effect post-confirmation. *E.g., In re Clark,* 71 B.R. 747, 749 (Bankr.E.D.Pa.1987); *In re Adams,* 12 B.R. 540, 541–42 (Bankr.D.Utah 1981). In an effort to balance the effect of § 1327(b) against the interests of the debtor, the court in *In re Adams* classified post-confirmation assets as "property of the estate" or "property of the debtor" depending on whether the assets were dedicated to fulfilling the Chapter 13 plan. 12 B.R. at 541. *In re Adams* presumed the Chapter 13 estate survived after confirmation, and the only issue was what the estate included and what was protected by the stay. That is not the issue in the present case—we must determine if an estate exists post-confirmation.

Although this issue was presented to this court in *Laughlin v. United States IRS,* 912 F.2d 197 (8th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991), the court resolved that case without addressing the issue. Judge Magill in dissent noted that the majority declined to "consider this issue, reasoning that the precise terms Congress used in § 362(a) are irrelevant because ... the IRS levy does not interfere with the general purpose of the stay." *Id.* at 200. The dissent outlined the precedent addressing this issue and found the cases holding the estate continues to exist following confirmation to be "more persuasive." *Id.* at 202. We agree.[5]

We join the line of cases holding the estate continues to exist after confirmation of the Chapter 13 plan. Upon reviewing § 1327 regarding the effect of confirmation, even if property of the estate vests in the debtor at confirmation, that does not necessarily mean that the estate no longer exists. The estate can continue to exist as a legal entity after confirmation even if it holds no property. Several sections of the bankruptcy code support our view that the estate continues to exist after confirmation. Section 1322(a)(1) provides for "supervision and control" by the trustee over monies and property of the estate committed to the plan. In addition, the trustee is authorized to deposit or invest money of the estate pursuant to 11 U.S.C. § 345, and 11 U.S.C. § 347(a) provides that the trustee shall stop payment on any unpaid

**5.** This court addressed similar issues in *In re Lindberg,* 735 F.2d 1087 (8th Cir.1984) (*Lindberg*), and *Resendez v. Lindquist,* 691 F.2d 397 (8th Cir.1982) (*Resendez*). *Lindberg* dealt with a conversion from Chapter 13 to Chapter 7, but the sole issue in that case was whether the debtors could claim a different homestead exemption at the time of conversion than the one they originally designated at the commencement of their Chapter 13 proceedings. *Resendez* addressed whether a debtor could exempt undistributed funds turned over by the Chapter 13 trustee to the Chapter 7 trustee upon conversion.

The court in *Lindberg* held the debtors could change their homestead because in Chapter 13 there are no true exemptions because the debtor remains in possession of his property. The "Chapter 13 statement" filed by the debtors listed their assets and liabilities and designated what exemptions they would claim if they had to liquidate their estate. The purpose of making such a statement is only to permit creditors to determine whether the Chapter 13 plan should be accepted, and for the court to determine in confirming the plan if the creditors are receiving more under the plan than they would in a Chapter 7 liquidation. *Id.* 735 F.2d at 1089.

Following this discussion the court in *Lindberg* made the statement that "when there is confir-

mation, ... of a chapter 13 plan, the confirmation of the plan vests all of the property of the estate in the debtor free and clear of any claim or interest of any creditor provided for by the plan unless the plan provides otherwise." *Id.* This statement was not made as part of the holding of the case; rather, its purpose was to explain that in Chapter 13 there are no exemptions, in contrast to Chapter 7 where the debtor may exempt from the property of the estate.

The court in *Lindberg* was not attempting to address the larger issue with which we are faced, because the court did not refer to *Resendez* which supports our holding in the present case. The court in *Resendez* held that undistributed funds in the possession of a Chapter 13 trustee after confirmation of the plan are property of the Chapter 13 estate; therefore, the funds would become part of the Chapter 7 estate upon conversion and could not be exempted. *Id.* 691 F.2d at 399. The court found the funds were voluntarily paid to the Chapter 13 trustee; therefore, "[t]hese funds no longer belonged to the debtor, but became part of their estate." *Id.* This result is consistent with the holding of *In re Nash,* 765 F.2d 1410, 1412, 1414 (9th Cir.1985), and supports our present holding that an estate continues to exist after confirmation of a Chapter 13 plan.

checks 90 days after the final distribution and the remaining property of the estate is to be paid into the court. Section 704(9), made applicable to Chapter 13 by 11 U.S.C. § 1302(b)(1), requires the trustee to make a final report and file a final account of the "administration of the estate." Finally, 11 U.S.C. § 349(b)(3) states that unless the court orders otherwise, dismissal of a Chapter 13 case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." These sections support the position that the estate continues to exist after confirmation of a Chapter 13 plan.

As noted by the court in *In re Root:*

[i]f there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler. Even 11 U.S.C. § 704(9) ... provides that the Trustee shall "... make a final report and file a final account of the administration of the estate with the court." There must be an "estate" upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 plan.

61 B.R. at 985.

We think that the opposing line of cases is "premised upon the mistaken belief that revesting under § 1327(b) transforms property of the estate into property of the debtor." *In re Aneiro,* 72 B.R. 424, 428–29 (Bankr. S.D.Cal.1987). The *Aneiro* court further stated:

the clear language of § 1306 demonstrates that confirmation of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate. The relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case. If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision.

*Id.* at 429. We agree.

For example, Congress did intend for confirmation to so affect property of the estate in Chapter 11 bankruptcy proceedings. Confirmation of a plan under Chapter 11 vests all property of the estate in the debtor under 11 U.S.C. § 1141(b). However, confirmation of a plan in Chapter 11 also acts as a discharge of the case, thus ending the automatic stay provided for in 11 U.S.C. § 362. 11 U.S.C. § 1141(d). That is not the effect of confirmation in a Chapter 13 case.

### III.

The post-petition debts in the present case were incurred for feed and veterinary services for debtors' hog herd and should be considered administrative expenses necessary to preserve the estate pursuant to § 503(b)(1)(A). These post-petition debts were not unauthorized borrowing by debtors; rather, these transactions were in the ordinary course of business and were necessary to preserve debtors' principal asset, their hog herd. Therefore, we hold the bankruptcy court was correct in finding the Chapter 13 estate continued post-confirmation and in classifying the post-petition debts as administrative expenses entitled to priority under § 507(a)(1).

Accordingly, the order of the district court is affirmed.