**In re David E. LEE and Kathleen M. Lee, Debtors.**

**FORD MOTOR CREDIT CO., Plaintiff,**

v.

**David Edward LEE and Kathleen Michelle Lee, Defendants.**

Bankruptcy No. 3–93–892.
Civ. No. 4–93–862.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 21, 1993.

Linda J. Jungers, Stewart, Slimen & Jungers, Minneapolis, MN, for plaintiff.

Curtis K. Walker, Walker Law Office, Cherylyn T. Pucel, Pucel Law Office, Minneapolis, MN, for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on Ford Motor Credit Company's appeal from the bankruptcy court's July 14, 1993, order confirming debtors' Chapter 13 plan. The bankruptcy court's order will be affirmed.

### BACKGROUND

On October 14, 1989, debtors David E. Lee and Kathleen M. Lee purchased a 1988 Chevrolet Celebrity automobile and entered into a five-year installment sales contract with Viking Chevrolet. Viking Chevrolet then assigned its rights under the contract to Ford Motor Credit Company (FMCC). Over three years later, on December 4, 1992, debtors borrowed $765.82 from Suburban Credit Plan, Inc. of St. Paul, Minnesota, and granted Suburban Credit a second lien on the automobile.

On February 25, 1993, debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. With their petition for relief, debtors filed a proposed Chapter 13 plan. In response to debtors' petition, FMCC filed a proof of claim for $5,635.69. FMCC claimed $3,725.00 as secured based on the book value of the automobile, $649.87 as postpetition interest, and the remaining $1,260.82 as unsecured. Suburban Credit also filed a proof of claim for $980.00, claiming the entire amount as secured.

The plan that debtors submitted at the time they filed the petition was on the approved local form. However, debtors typed in the following additional provision:

Upon completion of payment of the secured portion of any claim, the property securing said claim shall vest in the debtor free and clear of any lien, claim or interest of the secured creditor.

Appellant's Brief Exh. B. FMCC objected to confirmation of the plan because of this added provision. The bankruptcy court heard oral arguments on May 13, 1993, after which the court requested supplemental

briefs. General Motors Acceptance Corporation submitted an amicus brief in support of FMCC. On July 14, 1993, the bankruptcy court[1] issued an order which overruled FMCC's objections and confirmed the debtors' plan. *In re Lee*, 156 B.R. 628 (Bankr. D.Minn.1993). FMCC now appeals that order. The order will be affirmed.

## DISCUSSION

■ The facts in this case are undisputed; the only question is whether the bankruptcy court correctly interpreted the law. The Court reviews the bankruptcy court's conclusions of law de novo. *Steven v. Pike County Bank*, 829 F.2d 693, 695 (8th Cir.1987).

### I. *Applicable Law and the Bankruptcy Court's Order*

This case involves difficult issues of statutory interpretation and presents a question of first impression in this district. The Court believes that the issues raised are most effectively presented by discussing the pertinent statutes in the context of relevant case law. This section presents relevant United States Supreme Court and lower court precedent, followed by a discussion of the bankruptcy court's opinion in this case.

### A. *Supreme Court Precedent*

Two recent decisions of the United States Supreme Court are relevant to this case. The first is *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup*, debtor executed a deed of trust granting the creditor a lien on two parcels of farmland. Debtor defaulted within a year. Before the creditor could foreclose on the real property, debtor filed for bankruptcy under Chapter 7. Debtor then brought an adversary proceeding pursuant to section 506 of the Bankruptcy Code to "avoid" a portion of the lien. Section 506(a), which provides the process for bifurcating allowed claims[2] into secured and unsecured portions, provides that:

An allowed claim of a creditor secured by a lien on property in which the estate

has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

11 U.S.C. § 506(a) (emphasis added). Section 506(d), which provides the process for avoiding liens on claims that are not allowed, provides that:

To the extent that a lien secures a claim against the debtor that is not *an allowed secured claim*, such lien is void....

11 U.S.C. § 506(d) (emphasis added). In *Dewsnup*, the Supreme Court was presented with the issue whether, after the creditor's claim was bifurcated under section 506(a), the remaining unsecured portion of the claim was not "an allowed secured claim" within the meaning of section 506(d) and thus the debtor could avoid application of the lien to that portion of the claim.

Under *Dewsnup*'s facts, the creditor had loaned the debtor $119,000, but the market value of the land was determined to be only $39,000. Thus, under section 506(a), the creditor had a secured claim for $39,000, and unsecured claim for the remaining portion of the debt. The issue was whether section 506(d) operated to void the lien with respect to the unsecured portion. In other words, debtor sought to "strip down" the lien to cover only the secured portion of the claim. Under the plan, once the creditor had been paid $39,000, the lien would be extinguished even though plan payments would not be complete. The creditor objected to the plan.

The Supreme Court began with a caveat:

[T]he contrasting positions of the respective parties and their *amici* demonstrates that § 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities. Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the

---

1. The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

2. In general, a claim is allowed unless a party in interest objects. 11 U.S.C. § 502(a).

statute in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

*Dewsnup*, —— U.S. at ——-——, 112 S.Ct. at 777–78 (citations omitted). With that admonition, the Court concluded that "although not without its difficulty, [the position advanced by the creditor] generally is the better of the several approaches." *Id.* —— U.S. at ——, 112 S.Ct. at 778.

The Court then provided two general reasons for its conclusion that section 506(d) does not authorize strip down. First, the Court stated that the practical effect of accepting the debtor's position would be to freeze the creditor's secured interest at the current value, and the creditor would lose the benefit of any increase in the value of the property. Second, the Court noted that under the Bankruptcy Act of 1898, it was clearly established that a lien on real property passed through bankruptcy unaffected. The Court concluded that Congress enacted the Bankruptcy Code of 1978 with full understanding of this practice. The Court found that given the ambiguity in the statutory text, it would be improper to create a broad new rule limiting the scope of liens because such a rule would be contrary to established bankruptcy principles. The Court stated its holding as follows:

> Therefore, we hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502. Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a). But, given the ambiguity in the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected.

*Id.* —— U.S. at ——, 112 S.Ct. at 778 (footnote omitted).

The second relevant Supreme Court case is *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman*, the creditor loaned the debtors money for the purchase of their principal residence; in exchange, debtors executed a note and a deed of trust. Debtors subsequently filed a petition for relief under Chapter 13 of the Bankruptcy Code. The bank filed a claim for $71,335, and the residence was valued at $23,500. The plan proposed to make payments of $23,500, and to treat the remainder of the claim as unsecured. Under the plan, unsecured creditors were to receive nothing. Not surprisingly, the creditor objected to confirmation of the plan.

The Supreme Court began its analysis with a discussion of section 1322, which sets forth the elements of a confirmable Chapter 13 plan. Unlike cases under Chapter 7, such as *Dewsnup*, section 1322(b) allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's residence. Specifically, section 1322(b) provides that the plan may—

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b). The parties agreed that the "other than" exception prevented modification of the "rights" of a homestead mortgagee, but the debtors asserted that the creditor's "rights" were limited to the value of the collateral, or $23,500.

The Court noted that the Bankruptcy Code does not define "rights." The Court concluded the term "rights," as used in section 1322(b), is to be defined by state law. The Court held that the creditor's rights under state law included the right to retain the lien until the entire debt was paid off and, because debtors sought to modify those rights, the bankruptcy court properly denied confirmation of the plan.

### B. *Lower Court Cases*

Bankruptcy courts in other jurisdictions have been faced with issues similar to the issue before the Court. There are three

decisions that are particularly relevant because they interpreted and applied *Dewsnup* and/or *Nobelman* in Chapter 13 cases in which the collateral was not the debtor's principal residence. The first case is *In re Murry–Hudson*, 147 B.R. 960 (Bankr. N.D.Cal.1992). In *Murry–Hudson*, the debtor purchased a new automobile. FMCC provided financing and took a security interest in the automobile. The certificate of ownership was issued to FMCC as the legal owner, and the debtor was issued a registration card. Debtor subsequently filed a Chapter 13 case. The debtor's plan bifurcated FMCC's claim pursuant to section 506(a), listing $4,370 as secured based on the book value of the automobile, and $4,504 as unsecured. The plan further provided that FMCC would receive one hundred percent of its secured claim, and seventy cents on the dollar on its unsecured claim. The plan also contained a provision which stated that "secured creditors shall retain their liens until their allowed secured claims have been paid." *Id.* at 961. FMCC accepted the plan.

Once the debtor had paid off the secured portion of FMCC's claim, the debtor sought to compel FMCC to convey title of the automobile to her even though, under the plan, payment of the unsecured claims would not be completed for more than a year. In its analysis, the bankruptcy court noted that because FMCC had not objected to the plan, "this dispute does not involve the raging controversy over bifurcation of claims under 506(a) and avoidance of liens under § 506(d) in Chapter 13 cases." *Id.* at 962. The bankruptcy court then made two findings. First, the bankruptcy court found that the plan language clearly provided for lien stripping and thus FMCC should have objected to the plan at the time it was proposed. Second and significantly for the purposes of the case at bar, the bankruptcy court stated that it would have reached the same result even in the absence of the plan's language quoted above because the claim had been bifurcated under section 506(a). The court stated that "[g]iving [section 1322(b) ] its plain meaning, it must be concluded that a Chapter 13 debtor is permitted not merely to alter the amount and terms of payment of her secured debts, but to hold the property free and clear

of liens after paying the allowed secured claims in accordance with the provisions of her confirmed plan." *Id.* In other words, the court held that, in Chapter 13 cases, once the secured portion of a bifurcated claim is paid, lien-stripping occurs as a matter of law.

The second relevant case is *Ford Motor Credit Co. v. Pickett (In re Pickett)*, 151 B.R. 471 (Bankr.M.D.Tenn.1992). In *Pickett*, the debtors filed under Chapter 13. FMCC filed a proof of claim for a secured claim of $12,-638 based upon its lien on the debtor's pickup truck. Under the debtors' plan, FMCC's claim was bifurcated and FMCC was allowed a secured claim of $7,500, with the remaining debt listed as an unsecured claim. The plan also provided for one hundred percent payment of the unsecured claims. FMCC accepted the plan. After the debtors had paid off FMCC's secured claim but before they had paid off the unsecured claims, the debtors converted the case to one under Chapter 7.

FMCC moved the bankruptcy court for relief from the automatic stay to repossess the pickup. FMCC sought to enforce its lien to collect payment on the remaining portion of the debt that had been designated as unsecured under the debtors' Chapter 13 plan. The primary issue before the bankruptcy court was whether FMCC's lien survived or whether it had been extinguished upon payment of the secured portion of the claim. The bankruptcy court held that because the claim had been bifurcated, and because the secured portion of the claim had been paid off, the lien had been extinguished and the conversion of the case to one under Chapter 7 did not revive the lien.

The bankruptcy court then attempted to reconcile its decision with *Dewsnup*. After quoting the *Dewsnup* Court's admonition that its holding was limited to the facts of the case, the bankruptcy court wrote that:

> Interpreted broadly, *Dewsnup* is appealing to creditors like Ford. This Court, however, must follow the guidance of the Supreme Court and must confine the *Dewsnup* decision to its particular facts.

> This case does not involve Chapter 7 debtors using § 506(d) to "strip down" the

real property lien of a secured claimholder. Rather, this case involves Chapter 7 debtors who have satisfied an allowed secured claim on personal property under a pre-conversion Chapter 13 plan. The question is not whether the Debtors can strip down Ford's lien, but whether the Debtors already have satisfied Ford's secured claim under Chapter 13, thereby extinguishing the lien. Therefore, *Dewsnup* does not support Ford's position.

*Id.* at 474. In other words, like the *Murry–Hudson* court, the *Pickett* court held that once a debtor pays off the secured portion of a bifurcated claim pursuant to the terms of a Chapter 13 plan, the lien is extinguished.as a matter of law.

The third relevant case is *Hirsch v. Citicorp Mortgage Corp. (In re Hirsch)*, 155 B.R. 688 (Bankr.E.D.Pa.1993). In *Hirsch*, the creditor had a security interest in not only the debtor's principal residence, but also rents and profits generated from the principal residence and fixtures located in the principal residence. The debtor filed for relief under Chapter 13 and the debtor's plan proposed that the creditor's lien would be stripped down to the value of the residence. The bankruptcy court was presented with the issue whether *Nobelman* applied to these facts. The bankruptcy court concluded that lien-stripping is generally available under section 1322(b), with an exception for "a claim secured *only* by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b) (emphasis added). The bankruptcy court found that this exception was inapplicable because the creditor's claim was not secured "only" by a security interest in real property, but also by a security interest in rents and profits and fixtures. Accordingly, the bankruptcy court permitted the debtor to strip down the creditor's lien to the value of the mortgaged real estate.

In short, bankruptcy courts appear to agree that even after *Dewsnup* and *Nobelman*, lien-stripping is available in Chapter 13 cases when the claim is secured by something other than real property that is the debtor's principal residence.

**3.** This point is not challenged on appeal.

## C. *The Bankruptcy Court's Decision*

The bankruptcy court's opinion in the case at bar is brief. *In re Lee*, 156 B.R. 628 (Bankr.D.Minn.1993). First, the bankruptcy court found that no adversary proceeding was necessary for the debtors to modify FMCC's rights as part of the plan.[3] Second, the bankruptcy court held that *Dewsnup*, which involved a Chapter 7 petition, did not prevent a strip down of FMCC's lien because different rules apply in Chapter 13 cases. The court cited *Nobelman* and *In re Pickett* to support that conclusion. Finally, the bankruptcy court summarily rejected FMCC's argument that once the secured portion of the claim was satisfied, title should not immediately vest in the debtors but rather should be held by the trustee pending completion of the plan. The court concluded that absent specific statutory authority for that conclusion, such policy considerations are best left to Congress.

## II. *Issues Presented by FMCC on Appeal*

FMCC advances two issues on appeal. First, FMCC argues that even in Chapter 13 cases, an undersecured creditor cannot be compelled to release its lien upon payment of only the secured portion of the claim and before completion of the plan. In other words, FMCC argues that the Bankruptcy Code does not allow debtors to strip down FMCC's lien without FMCC's consent. Second and in the alternative, FMCC asserts that even if its lien is extinguished upon full payment of the secured portion of its claim, the collateral may not vest in debtors free and clear of FMCC's lien at any time before completion of the plan payments. FMCC argues the collateral should vest with the estate, not debtors, pending completion of the plan.

## A. *Strip Down of Liens in Chapter 13*

FMCC appears to concede that the plain language of section 1322(b) indicates that debtors may strip down FMCC's lien to the value of the collateral. Again, section 1322(b) provides that the plan may "modify

the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b). However, FMCC argues, other provisions of Chapter 13 should be read to limit section 1322(b)'s seemingly broad application.

First, FMCC cites section 1325, which governs confirmation of a Chapter 13 plan. Section 1325 provides that the bankruptcy court shall confirm a Chapter 13 plan if, among other things:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan; [or]
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5). FMCC obviously has not accepted the plan. Thus, the plan must satisfy section 1325(a)(5)(B), which FMCC contends it does not. FMCC relies on section 1325(a)(5)(B)(i) in arguing that the plan should not be confirmed because it does not provide that FMCC, as a holder of a secured claim, shall retain its lien. Debtors counter by arguing that section 1325 entitles FMCC to retain its lien only until debtors compensate FMCC for the current value of the lien.

Second, FMCC argues that the bankruptcy court erred in not referring to section 506(d). In *Dewsnup*, the Supreme Court held that section 506(d) does not authorize the strip down of liens in Chapter 7 cases. FMCC argues that section 506(d) has equal effect in Chapter 13 cases. Debtors respond by arguing that *Dewsnup*'s holding does not apply to Chapter 13 because section 1322(b) authorizes the modification of a secured party's rights and thus is clearly an exception to the pre-Code rule that liens pass through bankruptcy.

■ The Court finds that the statutory text, the case law, and the general policies behind Chapter 13 all support a conclusion

that debtors may strip down FMCC's lien to the value of the collateral as of the date of the filing of the petition. First, the Code clearly provides that, in Chapter 13 cases, the rights of secured parties may be modified unless the collateral is the debtor's principal residence. 11 U.S.C. § 1322(b). In this case, the collateral is not the debtors' principal residence. Moreover, the Code allows confirmation of a plan even without a secured party's approval if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [the secured] claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). The plan provides for full payment of the secured portion of FMCC's claim. Thus, FMCC's approval of the plan is not necessary.

Second, the case law interpreting the relevant statutes supports the conclusion that lien-stripping is permissible under the facts of this case. *Dewsnup* clearly holds that, in a Chapter 7 case, a debtor may not use section 506(d) to void a lien securing a claim which has been allowed in full under section 502. However, *Dewsnup* admonished courts to interpret its holding narrowly and thus it does not prevent the use of other statutory provisions to achieve the same result. *See Dewsnup*, —— U.S. at ——, 112 S.Ct. at 779. In this case, debtors have filed a petition under Chapter 13, not Chapter 7, and debtors rely on section 1322(b), not section 506(d), as authority. Unlike section 506(d), section 1322(b) is unambiguous and allows for the modification of a secured party's rights, a clear change from pre-Code practice. *See id.* Similarly, *Nobelman* is not an obstacle. *Nobelman* holds that a debtor may not use section 1322(b) to void the undersecured portion of a lien on the debtor's principal residence. However, the *Nobelman* holding is based on the limited exception in section 1322(b) governing collateral that consists of the debtor's principal residence. In this case, debtors are seeking to strip down the undersecured portion of a lien on the debtors' automobile. As Justice Stevens explained in a brief concurrence:

> At first blush it seems somewhat strange that the Bankruptcy Code should provide

less protection to an individual's interest in retaining possession of his or her home than of other assets. The anomaly is, however, explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market. *See Grubbs v. Houston First American Savings Assn.*, 730 F.2d 236, 245–246 (CA5 1984) (canvassing legislative history of Chapter 13 home mortgage provisions). It therefore seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress. Accordingly, I join its opinion and judgment.

*Nobelman*, —— U.S. at ——————, 113 S.Ct. at 2111–12 (Stevens, J., concurring). The Court agrees with the bankruptcy courts which have concluded that *Dewsnup* and *Nobelman* do not limit the general availability of lien-stripping in Chapter 13 cases. *See Hirsch v. Citicorp Mortgage Corp. (In re Hirsch)*, 155 B.R. 688 (Bankr.E.D.Pa.1993); *In re Murry–Hudson*, 147 B.R. 960 (Bankr. N.D.Cal.1992).

Third, a holding that strip down is never available in Chapter 13 cases would not only be contrary to the statutory text and the case law, it would also defeat one of the primary purposes of Chapter 13, which is to offer debtors an incentive to gradually repay their obligations rather than to liquidate their assets under Chapter 7. *United States v. Estus (In re Estus)*, 695 F.2d 311, 313 (8th Cir.1982); *In re Leverett*, 145 B.R. 709, 713 (Bankr.W.D.Okla.1992). One of the incentives Chapter 13 provides is to allow the modification of a secured party's rights, an option not available under Chapter 7. *See* David G. Epstein, Steve H. Nickels, & James J. White, 2 *Bankruptcy* § 9–2 at 602 (1992) ("Chapter 13 gives debtors bargaining power, particularly with their secured creditors, that they do not enjoy in a Chapter 7.").

For all of these reasons, the Court holds that lien-stripping is permissible under the facts of this case.

**B.  *Vesting of Property in the Debtors***

In an alternative argument, FMCC asserts that the plan improperly vests the collateral in debtors free and clear of FMCC's lien before completion of the plan. FMCC argues that if its lien is stripped after debtors pay off the allowed secured claim, the collateral should then vest with the estate, not debtors, pending completion of the plan.

The Bankruptcy Code's provisions on the vesting of property in Chapter 13 cases appear to be somewhat contradictory. Section 541(a)(i) broadly defines property of the estate to include "all legal or equitable interests of the debtor" and section 541 is applicable to all chapters of the Code. In addition, section 1306 provides that, in Chapter 13 cases, property of the estate includes postpetition property and earnings acquired before completion of the plan. 11 U.S.C. § 1306.

However, the Code also provides that property can vest with Chapter 13 debtors prior to completion of the plan. Section 1322(b)(9) states that "the plan may ... provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Moreover, section 1327 provides, in relevant part, that:

(b) Except as otherwise provided in the plan or the order confirming the plan, *the confirmation of a plan vests all of the property of the estate in the debtor.*

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is *free and clear of any claim or interest of any creditor* provided for by the plan.

11 U.S.C. § 1327 (emphasis added).

A recent opinion of the United States Court of Appeals for the Eighth Circuit clears up some of the confusion caused by these conflicting provisions. In *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir.1993), the issue before the court was whether a Chapter 13 estate continues to exist after confirmation of a Chapter 13 plan. The court began by noting that there is a tension between section 1306, which provides that all property the debtor acquires between the filing of the petition and the completion of the case is property of

the estate, and section 1327(b), which provides that upon confirmation of the plan all property of the estate vests in the debtor. The court pointed out that the tension between these provisions has led to a split in authority on the question of whether the estate continues to exist post-confirmation. The court concluded that the cases holding that the estate continues to exist were more persuasive. The court stated that:

> Upon reviewing § 1327 regarding the effect of confirmation, even if property of the estate vests in the debtor at confirmation, that does not necessarily mean that the estate no longer exists. The estate can continue to exist as a legal entity after confirmation even if it holds no property.... We think that the opposing line of cases is "premised upon the mistaken belief that revesting under § 1327(b) transforms property of the estate into property of the debtor."

*Id.* at 690–91 (citations omitted).

FMCC begins by pointing out the inconsistencies in the Code noted above and argues that these inconsistencies indicate that the Court should not allow the collateral to vest with debtors before completion of plan payments. Moreover, FMCC argues, policy considerations dictate that any vesting of the collateral prior to completion of the plan should be with the estate, not with debtors. FMCC argues that such a conclusion is logical for several reasons. First, such a finding would prevent junior lienors from improving their position. FMCC argues that once debtors pay off the secured portion of FMCC's claim, Suburban Credit would then be able to argue that its claim had become secured, an unfair situation according to FMCC. Second, FMCC argues that upon satisfaction of the secured portion of FMCC's claim, debtors will have an incentive to convert their petition to one under Chapter 7 because FMCC's lien will have been extinguished.

Debtors respond by arguing that FMCC is attempting to create a conflict between Code provisions where none exists. Moreover, debtors assert, there is no policy reason to delay vesting of title in debtors until all plan payments are complete. Debtors contend that it is likely that they will need to replace the automobile before the completion of all plan payments and it would be a burden on both them and the bankruptcy court to require debtors to obtain a court order authorizing them to either sell or junk the automobile.

■ The Court holds that the collateral may vest in debtors upon full payment of the secured portion of FMCC's claim. Section 1322(b)(9) provides that "the plan may ... provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor." FMCC, as a secured creditor, may not block confirmation of the plan if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [the secured] claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). The plan provides for full payment of FMCC's allowed secured claim. Thus, the bankruptcy court properly approved the plan despite the fact that collateral will vest with debtors prior to completion of the plan.

*Security Bank of Marshalltown, Iowa v. Neiman,* 1 F.3d 687 (8th Cir.1993), does not compel a different result. *Neiman* merely decided that the estate continues to exist after confirmation of the plan; it did not hold that property of the estate may not vest with a debtor until completion of the plan. In fact, the court specifically stated that even if all property of the estate vests in the debtor before completion of the plan, that does not mean that the estate no longer exists. *Id.* at 690. "The estate can continue to exist as a legal entity after confirmation even if it holds no property." *Id.* In short, *Neiman* supports a conclusion that the collateral may vest with debtors prior to completion of the plan even though the estate will continue to exist until completion of the plan.

Finally, the Court will not, because of policy considerations, ignore the Code's provisions which allow the vesting of the collateral with debtors upon full payment of the secured portion of the claim. The Court agrees with the bankruptcy court's conclusion that such policy considerations are best left to Congress. 156 B.R. at 631 n. 7. Moreover, close scrutiny reveals that the pol-

icy considerations raised by FMCC are more illusory than real. First, FMCC argues that the collateral should remain property of the estate even after FMCC's allowed secured claim is paid so that the junior lien-holders will not be able to improve their positions. However, there is no authority to justify FMCC's fear that once the secured portion of FMCC's claim is paid, Suburban Credit will be able to claim that its previously unsecured claim has become secured. The plan lists Suburban Credit's claim as unsecured. The plan also provides that upon payment of FMCC's allowed secured claim, the property vests in debtors free and clear of liens. Under these circumstances, any such argument by Suburban Credit would clearly fail. Second, the Court is unpersuaded by FMCC's argument that vesting of the collateral in debtors upon payment of the secured portion of the claim will provide an incentive for debtors to convert the petition to one under Chapter 7. FMCC is likely to receive at least as much in this Chapter 13 action as it would have had debtors originally filed under Chapter 7. Moreover, there are many protections in the Code preventing such abuses by debtors. *See In re Murry–Hudson,* 147 B.R. 960, 962–64 (Bankr.N.D.Cal.1992) (describing at length why creditor's concerns that debtors might dismiss or convert their Chapter 13 plans shortly after paying off allowed secured claims were unfounded).

For all of these reasons, the Court concludes that FMCC's objections to the plan based on the vesting of the collateral in debtors prior to completion of the plan were properly overruled by the bankruptcy court.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

**IT IS ORDERED** that the bankruptcy court's order confirming debtors' Chapter 13 plan is affirmed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**