**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: BRENDA MARIE JONES,
                            *Debtor,*

CALIFORNIA FRANCHISE TAX BOARD,
                            *Appellant,*

v.

JOHN T. KENDALL, Trustee; UNITED
STATES TRUSTEE, Oakland,
                            *Appellees,*

BRENDA MARIE JONES,
                *Debtor-Appellee.*

No. 10-60000

BAP No.
09-1145

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Baum, Dunn, and Jury, Bankruptcy Judges, Presiding

Argued and Submitted
December 7, 2010—San Francisco, California

Filed July 12, 2011

Before: Dorothy W. Nelson, M. Margaret McKeown, and
Ronald M. Gould,[1] Circuit Judges.

Opinion by Judge McKeown

---

[1]Judge Gould was drawn to replace Judge Thompson on this panel after
Judge Thompson's death.

**COUNSEL**

Edmund G. Brown, Joyce E. Hee, David Lew (argued), Office of the Attorney General, Oakland, California, for the appellant.

Max Cline, Melanie Tavare (argued), Oakland, California, for the debtors-appellees.

**OPINION**

McKEOWN, Circuit Judge:

   At issue in this bankruptcy appeal is a tax debt owed by Brenda Marie Jones ("Jones") to the California Franchise Tax

Board ("FTB"). The bankruptcy court and the Bankruptcy Appellate Panel ("BAP") found that the debt was not excepted from discharge in Jones's Chapter 7 bankruptcy proceeding. Although debts arising before a discharge order in a Chapter 7 proceeding are generally discharged, certain tax debts are excepted. *See* 11 U.S.C. § 727(b); *see also id.* §§ 523(a)(1)(A), 507(a)(8). A statute of limitations, known as the "three-year lookback period," carves out tax debts arising from a taxable year ending on or before the bankruptcy petition is filed and for which the return was last due no more than three years before the petition is filed. *Id.* § 507(a)(8)(A); *see Young v. United States*, 535 U.S. 43, 46 (2002).

Because Jones's tax debt arose more than three years before she filed her Chapter 7 bankruptcy petition, it would be discharged unless the lookback period was suspended by statute. The lookback period is suspended by an unnumbered paragraph in § 507(a)(8)[2] ("the suspension provision") when, as relevant here, an automatic stay precludes the creditor from collecting on the debt. The only automatic stay provisions potentially at issue in this appeal are those that preclude creditors from pursuing collection actions against the property of a bankruptcy estate. *See* 11 U.S.C. §§ 362(a)(3), 362(a)(4).[3] The FTB argues that, as a consequence of Jones's prior Chapter 13 bankruptcy case, the lookback period was suspended and the tax debt not discharged. We are not persuaded.

When the bankruptcy court confirmed the Joneses' Chapter 13 plan, the estate property revested in Jones and became Jones's property, thus lifting the applicable stay provisions. *See id.* §§ 362(a)(3), 362(a)(4). Since this revesting occurred before the tax debt came due, no stay precluded the FTB from collecting on the debt under § 362. Consequently, the tax debt

---

[2]Unless otherwise noted, statutory citations are to the Bankruptcy Code and are located in Title 11 of the United States Code.

[3]The parties do not argue that the other elements of the suspension provision or other subsections of § 362(a) are at issue here.

was not excepted from the Chapter 7 discharge, and the principles of equitable tolling do not apply to extend the lookback period as the FTB was neither precluded from collecting on the tax debt nor did it actively try to protect its claim. We hold the debt was discharged and affirm the BAP.

## I. BACKGROUND

Jones and her husband filed a joint voluntary Chapter 13 bankruptcy petition in July 2002. The act of filing the petition created a bankruptcy estate and imposed an automatic stay on creditor collection activities against property of the estate. *See* 11 U.S.C. §§ 541, 362(a). The bankruptcy court confirmed the Joneses' plan in September 2002. The Joneses filed their joint income tax return for the year 2002 in October 2003, pursuant to an extension, but they did not pay the approximately $6,000 they owed in reported taxes. The bankruptcy court dismissed the Joneses' Chapter 13 proceeding in September 2006.

Thirteen months later, in October 2007, Jones, but not her husband, filed a voluntary Chapter 7 bankruptcy petition. She received a discharge of her existing debts, which would include the tax debt unless it was otherwise excepted, in January 2008. *See id.* § 727(b). Because the Joneses' tax return was due more than three years before Jones filed her Chapter 7 petition, the debt is discharged unless the statutory suspension provision or equitable tolling apply to extend the lookback period. *See id.* § 507(a)(8)(A).

In 2009, the FTB successfully moved to reopen Jones's Chapter 7 case before the bankruptcy court and requested a determination that the tax debt was excepted from discharge. The bankruptcy court ruled in favor of Jones, holding that neither the Joneses' confirmed Chapter 13 plan nor the automatic stay in place during the Chapter 13 proceeding prevented the FTB from collecting the debt from Jones when the tax came due. The BAP affirmed, holding that the three-year lookback

period was not suspended because the suspension provision, the unnumbered paragraph in § 507(a)(8), applied only to the lookback period of Jones's prior Chapter 13 case, and equitable tolling did not apply.

We review *de novo* both the decision of the BAP and the legal conclusions of the bankruptcy court. *Brawders v. Cnty. of Ventura (In re Brawders)*, 503 F.3d 856, 859 n.1 (9th Cir. 2007); *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) ("The issue of dischargeability of a debt is a mixed question of fact and law that is reviewed *de novo*." (citation omitted)). Although we affirm the BAP's result, we rely on different grounds. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999) (stating that we may affirm on any ground supported by the record).

## II. ANALYSIS

### A. THE THREE-YEAR LOOKBACK PERIOD IS DEFINED WITH RESPECT TO JONES'S CHAPTER 7 PETITION.

**[1]** We begin with the basic proposition that the debt is discharged unless excepted, because the debt came due before the bankruptcy court ordered Jones's debts discharged. *See* 11 U.S.C. § 727(b). Importantly, however, one exception to a § 727 discharge is a tax debt as defined in § 507(a)(8).[4] *Id.* § 523(a)(1)(A). Subsection 507(a)(8)(A)(i) in turn excepts a tax debt from discharge

> only to the extent that such claims are for—

---

[4]The FTB also claims that the penalty associated with the Joneses' nonpayment of the 2002 income tax should not be discharged. The penalties associated with the tax debt are addressed under § 507(a)(8)(G). The analysis as to their discharge parallels that for the debt, such that if the tax is discharged, the penalties are as well. For simplicity, we discuss only the tax debt.

(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—

(i) for which a return, if required, is last due, including extensions, *after three years before the date of the filing of the petition*[.]

Emphasis added.

**[2]** This latter requirement, the three-year lookback period, functions as a statute of limitations. *Young*, 535 U.S. at 46-47. Section 507(a)(8)(A)(i) defines the three-year lookback period with respect to "*the* petition" (emphasis added). The statute does not refer simply to "a" or "any" petition under the title, as the FTB would have us read the statute. Instead, the plain language refers to "*the* petition" (emphasis added), meaning, in this case, the Chapter 7 petition. *See Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 872 (9th Cir. 2008) ("Where statutory language is plain, 'the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' " (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)), *abrogated on other grounds by Hamilton v. Lanning*, 130 S. Ct. 2464, 2478 (2010); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."). Thus, the three-year lookback period defined in § 507(a)(8)(A)(i) must be the period preceding Jones's Chapter 7 petition—that is, October 2004 through October 2007.

**[3]** As the debt came due in 2003, outside the three-year lookback period in Jones's Chapter 7 case, it is discharged unless we determine that statutory suspension or equitable tolling apply to extend the lookback period to encompass the 2003 due date.

**B.   THE STATUTORY SUSPENSION PROVISION DOES NOT APPLY TO JONES'S TAX DEBT.**

**1.   Section 507(a)(8) suspends the lookback period only where the creditor was specifically precluded from collection.**

Ultimately, this appeal turns on our interpretation of the suspension provision, which provides that the three-year look-back period

> shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

11 U.S.C. § 507(a)(8).

**[4]** The suspension provision contemplates three scenarios in which the lookback period is suspended. By the plain language of the statute, the first and third scenarios are limited to periods in which the government was "prohibited . . . from collecting a tax" and in which "collection was precluded by" a confirmed bankruptcy plan. *Id.* Neither circumstance is applicable. Instead, the second scenario is relevant here— "any time during which *the* stay of proceedings was in effect in a prior [bankruptcy] case." *Id.* (emphasis added). The FTB would have us read the statute to suspend the lookback period when a stay is in place against *any* creditor; Jones reads the statute narrowly to suspend the lookback period only where a stay precluding collection of *this* debt is in place. "Because neither party's reading of [the statute] is obviously correct, the

statute is ambiguous," and we look to the legislative history in deciphering its meaning. *Barstow v. IRS* (*In re Bankr. Estate of MarkAir, Inc.*), 308 F.3d 1038, 1043 (9th Cir. 2002).

**[5]** In enacting the unnumbered paragraph of § 507(a)(8), Congress intended to codify the rule established in *Young*. H.R. Rep. No. 109-31, at 101 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 165. In *Young*, the Supreme Court addressed a situation in which the debtor's pre-petition tax debt came due more than three years before the filing of a Chapter 7 petition. 535 U.S. at 45. The debtor had also filed a Chapter 13 petition ten months before the Chapter 7 petition, which was dismissed one day before the debtor filed the Chapter 7 petition. *Id.* The Court held that because the "automatic stay under § 362 [during the Chapter 13 petition] . . . prevented the [Internal Revenue Service ("IRS")] from taking steps to protect its claim," the three-year lookback period was equitably tolled for the length of the bankruptcy proceeding— the time during which the IRS was precluded from collecting the debt. *Id.* at 50. In so holding, the Court relied heavily on the principles of equitable tolling and the fact that the IRS was prohibited from collecting on the tax debt during a portion of the three-year lookback period of the Chapter 7 petition. *Id.* at 50-51 ("[T]he IRS was disabled from protecting its claim during the pendency of the Chapter 13 petition, and this period of disability tolled the three-year lookback period when the Youngs filed their Chapter 7 petition.").

**[6]** Because Congress made clear its intent to codify *Young* in enacting the suspension provision, we must give effect to that intent in interpreting the statute. Further, as the Court noted in *Young*, "Congress must be presumed to draft limitations periods in light of" equitable tolling principles which generally apply to statutes of limitations. *Id.* at 49-50. Those equitable tolling principles are, in turn, applied "only sparingly" and generally in situations in which a party was precluded by some obstacle from acting within the limitations period. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96

(1990). We conclude that the suspension provision applies here only if the FTB was precluded from collecting the debt by a stay of proceedings in Jones's prior case.

**2. The FTB was not precluded from collecting on the debt during the three-year lookback period and therefore does not benefit from the statutory suspension provision.**

The next question is whether the FTB was precluded from collecting on Jones's debt by an automatic stay provision under § 362(a) such that the lookback period was statutorily suspended. Two automatic stay provisions are potentially relevant, and both preclude creditors from collecting post-petition debts *from the bankruptcy estate*. *See* 11 U.S.C. §§ 362(a)(3), 362(a)(4); *see also id.* § 541(a). For post-petition creditors, the stay of collection from property of the estate remains in effect "until such property is no longer property of the estate." *Id.* § 362(c)(1). Section 362(a) does not stay collection activities by post-petition creditors against property of the debtor. *See Severo v. Comm'r*, 586 F.3d 1213, 1216 (9th Cir. 2009) ("An act against the property of the bankruptcy estate is stayed until it is no longer part of the estate[.]"). To decide whether the FTB was precluded from collecting on the debt during the Chapter 13 bankruptcy proceeding, we must determine whether Jones had property outside of the bankruptcy estate from which the FTB could collect the tax debt.

**[7]** Property of the bankruptcy estate is defined by § 1306(a)(1), which provides, in relevant part:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed,

or converted to a case under Chapter 7, or 11, or 12 of this title, whichever occurs first[.]

Read in conjunction with § 541, § 1306 implies that all property held before the filing of the petition—as well as all property acquired between the Chapter 13 petition filing date and the date the case is closed, dismissed, or converted—is property of the estate.

**[8]** Our inquiry would end there, and we would conclude that there was an automatic stay in place which precluded the FTB from collecting on the debt until the Joneses' Chapter 13 case closed, if not for § 1327(b), which provides:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Under § 1327(b), property of the estate revests in the debtor upon confirmation of a Chapter 13 plan, but § 1306(a)(1) does not include confirmation of the plan as one of the events defining the time period in which property acquired by the debtor becomes estate property. We have not had occasion to address the interplay between §§ 1306(a) and 1327(b). As the First Circuit has noted in harmonizing the two sections, "the status of the property of the estate after the confirmation of a Chapter 13 plan is a controversial issue." *Barbosa v. Solomon*, 235 F.3d 31, 36 (1st Cir. 2000). It is our task, however, to give meaning to each of these sections. *See Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1111 (9th Cir. 2009) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous[.]" (internal quotation marks and citation omitted)).

The bankruptcy courts and other circuits have developed four approaches to harmonizing these sections and determining whether and to what extent property of the estate revests

in the debtor at plan confirmation. Three of the approaches are based on the principle that property of the estate revests in the debtor upon plan confirmation, unless the plan provides otherwise. These approaches are known as the modified estate preservation, estate transformation, and estate termination approaches. Under the modified estate preservation approach, estate property vests in the debtor upon plan confirmation, but property acquired after confirmation becomes property of the estate pursuant to § 1306(a). *See Barbosa*, 235 F.3d at 36-37. The estate transformation approach holds that § 1327(b) vests estate property in the debtor upon confirmation, retaining estate property only to the extent necessary to carry out the plan. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1339-40 (11th Cir. 2000); *Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997). Finally, the estate termination approach, adopted by the bankruptcy court and the BAP in this case, holds that § 1327(b) revests all property of the estate in the debtor upon plan confirmation, and any property acquired after confirmation likewise vests in the debtor unless the plan or confirmation provides otherwise. *See In re Petruccelli*, 113 B.R. 5, 15 (Bankr. S.D. Cal. 1990). Under any one of these approaches, estate property would have vested in Jones at plan confirmation, and that property would not have been subject to an automatic stay. *See* 11 U.S.C. §§ 362(a)(3), 362(a)(4).

The fourth approach, known as the estate preservation approach, holds that although property of the estate "vests" in the debtor upon plan confirmation under § 1327(b), the property does not become property of the debtor. Instead, the estate remains fully intact and protected by the automatic stay until the case is closed, dismissed, or converted. *See In re Aneiro*, 72 B.R. 424, 429 (Bankr. S.D. Cal. 1987). No circuit has adopted the estate preservation approach, and we affirmatively decline to do so here. Although the BAP in this case read the Eighth Circuit's decision in *Sec. Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir. 1993), as adopting the estate preservation approach, we read it to provide only

that the Chapter 13 estate continues to exist post-confirmation. *Id.* at 689 ("The only issue before this court is whether the Chapter 13 estate existed after confirmation of the Chapter 13 plan[.]"). Significantly, *Neiman* explicitly noted that "[t]he estate can continue to exist as a legal entity after confirmation *even if it holds no property*." *Id.* at 690 (emphasis added).

**[9]** Resolution of this case does not require us to adopt one of the other specific approaches. Regardless of whether and to what extent the estate continues as a legal entity post-confirmation, we hold that, at the very least, some estate property revests in the debtor at confirmation. This interpretation gives meaning to § 1327(b), which provides that the estate property vests in the debtor upon confirmation unless provided otherwise in the plan. 11 U.S.C. § 1327(b). The statute does not define the term "vests," but "[w]hen terms used in a statute are undefined, we give them their ordinary meaning." *Hamilton*, 130 S. Ct. at 2471 (internal quotation marks and citation omitted). The common definition of vest is "[t]o confer ownership (of property) upon a person" and "[t]o invest (a person) with the full title to property." Black's Law Dictionary (9th ed. 2009).**[5]**

**[10]** In sum, we hold that under the plain language of § 1327(b), the property of the estate revests in the debtor upon plan confirmation, unless the debtor elects otherwise in the plan. Because Jones did not elect otherwise, she once again became the owner of her property at confirmation, except as to those sums specifically dedicated to fulfillment of the plan. Accordingly, the FTB was not precluded from collecting the post-petition tax debt from property that revested in Jones

---

**[5]**This is consistent with our prior holding that "revesting" in § 349(b)(3) means " 'to restore all property rights to the position in which they were found at the commencement of the case.' " *In re Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985) (quoting S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835).

upon plan confirmation. *See* 11 U.S.C. § 362(c)(1). Since the tax debt arose after plan confirmation, the FTB could have collected on the debt during the gap period between the due date of the debt and the second bankruptcy filing, and the lookback period is not statutorily suspended. *See id.* § 507(a)(8).

## C. EQUITABLE TOLLING DOES NOT APPLY.

[11] Because the FTB could have collected on the debt at any time after the tax came due, the principles of *Young* do not apply in this case, and we will not equitably toll the lookback period. The debt is accordingly discharged. *Cf. Young*, 535 U.S. at 50 (tolling the lookback period where "the IRS was disabled from protecting its claim during the pendency of the Chapter 13 petition").

The FTB argues that the unresolved issue of how to interpret §§ 1306(a) and 1327(b) effectively precluded it from attempting collection and therefore weighs in favor of equitable tolling. Any uncertainty in the statutes did not impede the FTB's other options. For example, the FTB could have sought relief from the stay under § 362 or moved to dismiss the Joneses' case for failure to pay post-petition taxes. As the bankruptcy court noted here, no court has imposed sanctions on a party attempting to determine the viability of its claim using either of these means.

[12] It also bears noting that the FTB had more than one year after the dismissal of the Joneses' Chapter 13 case during which it could have collected on the debt without any fear whatsoever of sanctions.[6] Instead, the FTB did not take any action to protect its claim until 2009, six years after the debt arose. This inaction creates the appearance that, rather than exercising caution in light of uncertainty, the FTB simply did

---

[6]The bankruptcy court dismissed the Chapter 13 case in September 2006, and Jones did not file her Chapter 7 petition until October 2007.

not pursue its claim until the opportunity to do so had passed. Equitable tolling is not appropriate where a party takes no timely step to preserve its claim and, in fact, faces no prohibition on asserting its claim during the limitations period. *See Young*, 535 U.S. at 47 (noting that the policies underlying statutes of limitations include the elimination of stale claims and a guarantee of certainty for both parties regarding their rights and potential liabilities).

**AFFIRMED.**