**In re Ernest JORDAN and Catherine Jordan, Debtors.**

**Bankruptcy No. 91–43998–399.**

United States Bankruptcy Court, E.D. Missouri, E.D.

Feb. 23, 1994.

Timothy H. Battern, St. Louis, MO, for debtors.

Howard S. Smotkin, Riezman & Blitz, St. Louis, MO, for GMAC.

Charles W. Riske, Clayton, MO, Chapter 7 Trustee.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

## *MEMORANDUM OPINION AND ORDER*

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This Chapter 13 case converted to a Chapter 7 case concerns "striping down" a lien secured by personal property to the market value of the collateral.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A), § 157(b)(2)(K), § 157(b)(2)(B), and § 157(b)(2)(O).

### STATEMENT OF FACTS

On June 18, 1991, Ernest and Catherine Jordan, (the "Debtors") filed for Chapter 13 relief under Title 11 of the United States Bankruptcy Code (the "Code"). 11 U.S.C. § 101 *et seq.* Their assets included a 1989 Buick Regal automobile which was secured by a lien in favor of General Motors Acceptance Corporation ("GMAC"). GMAC filed a claim in the amount of $11,931.69. The fair market value of the automobile was less than the amount owed to GMAC.

Over the course of the 29 months that the Debtors remained in Chapter 13, the portion of the GMAC claim equal to the fair market value of the automobile, $8,225.00, was paid in full with interest. The remaining portion, $3,706.69, was not paid in full and there is currently a balance of $2,242.81 due on the debt. On September 7, 1993, this case was converted to a Chapter 7 liquidation.

Following their conversion to Chapter 7, the Debtors moved to release the GMAC lien on their automobile, arguing that their Chapter 13 plan provided for release of the lien upon payment of the "secured portion of the GMAC claim." Motion for Release of Lien at ¶ 6 (the "Motion"). Debtors also objected to the GMAC claim on the grounds that it improperly lists the entire $11,931.69 claim as secured when the collateral had a fair market value of only $8,225.00. As these matters are necessarily intertwined, the Court will consider them jointly.

### DISCUSSION

*I. Secured Claims*

Those claims which are secured by a lien on property of the estate are subject to the provisions of § 506 of the Code. When

the amount of the claim exceeds the value of the collateral, § 506(a) mandates that the claim be divided into two separate claims: (1) a secured claim equal to the value of the collateral; and (2) an unsecured claim equal to the amount by which the claim exceeds the value of the collateral. In this case, for distribution purposes, GMAC's claim is treated as secured in the amount of $8,225.00 and unsecured in the amount of $3,706.69.

While § 506(a) of the Code concerns the secured status of claims for distribution purposes, an entirely separate provision, § 506(d), addresses secured claims for lien avoidance purposes. Section 506(d) reads:

> To the extent that a lien secures a claim against the debtor that is not an *allowed secured claim*, such lien is void, ...

§ 506(d) (emphasis added)

The meaning of the words "allowed secured claim," in a Chapter 13 context have generated irreconcilable opinions. In a Chapter 7 case, however, the issue is settled. The U.S. Supreme Court mandates that the words be read term-by-term such that § 506(d) refers to any claim that is, first, allowed under § 502 of the Code, and, second, secured by a lien. *Dewsnup v. Timm*, — U.S. —, — – —, 112 S.Ct. 773, 776–778, 116 L.Ed.2d 903 (1992). Thus, even though an undersecured claim can be bifurcated under § 506(a) and treated as two separate claims, one secured and one unsecured, for distribution purposes, the lien may not be stripped under § 506(d).[1] Under *Dewsnup*, so long as the claim is secured by a lien with recourse to the underlying collateral, and allowed under § 502, lien stripping in a Chapter 7 is unavailable. *Id.*, at —, 112 S.Ct. at 778.

## II. *Release of Lien in this Case*

In support of their contentions on the Motion, the Debtors point this Court to the expanding body of case law concerning the treatment of this issue in Chapter 13 cases.[2] These cases, while persuasive in a Chapter 13 bankruptcy, are largely irrelevant in this case. In the present action, Debtors converted their Chapter 13 case to a case under Chapter 7 of the Code.

■ The Code is very specific about the effect of conversion from one chapter to another. Section 348(a) of the Code reads:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, ... does not effect a change in the date of the filing of the petition ...

§ 348(a)

Thus, the effect of the Debtors' conversion of their Chapter 13 case is that a Chapter 7 case existed as of the date of the Chapter 13 filing. Therefore, the release of lien issue must be examined in a Chapter 7 context.

As discussed above, the Supreme Court has already addressed the issue of release of lien in a Chapter 7 case. *Dewsnup v. Timm*, — U.S. —, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Similar to *Dewsnup*, there is no question that the claim at issue here has been "allowed" under § 502 of the Code and GMAC's claim is secured by a properly perfected lien with recourse in the automobile. Therefore, under the plain meaning of § 348(a) and the holding in *Dewsnup*,[3] the Debtors are not entitled to release the lien on the automobile.[4]

---

1. More specifically, the phrase "secured portion of a bifurcated claim" envisioned by § 506(a) of the Code is not the same as the term "allowed secured claim" as it is used in § 506(d).

2. *See In re Murry–Hudson*, 147 B.R. 960, 962 (Bankr.N.D.Cal.1992) (Chapter 13 debtor is permitted not merely to alter the amount and terms of payment of her secured debts, but to hold the property free and clear of liens after paying the secured portion of the bifurcated claim; *In re Lee*, 156 B.R. 628 (Bankr.D.Minn.1993) *aff'd, In re Lee*, 162 B.R. 217 (D.Minn.1993); *but see In re Hernandez*, 162 B.R. 160 (Bankr.N.D.Ill.1993)

(Chapter 13 debtor cannot strip down lien even though secured portion is paid in full).

3. *Dewsnup* applied to a lien on real property and in this case the lien encumbers an automobile. Although the Supreme Court intended their *Dewsnup* opinion to be read narrowly, *see e.g. Dewsnup* — U.S. at —, 112 S.Ct. at 778, this Court is persuaded that the difference in the type of collateral is not a significant distinction.

4. This result is further supported by a review of § 349(b)(1)(C). If, as Debtors allege, § 506(d) were read to apply to the secured portion of all

92

Additionally, this Court is aware that some bankruptcy courts have ignored the plain meaning of § 348(a) and permitted release of lien in a converted Chapter 7. In *In re Pickett*, 151 B.R. 471, 474 (Bankr.M.D.Tenn. 1992) the court noted that § 348(a) is silent as to conversion's effect on liens. The *Pickett* court permitted the lien to be released because the portion of the claim that was treated as secured was paid in full in the Chapter 13. *Id.* This Court cannot agree with that reasoning. Even if § 348(a) did not apply, release of lien would be inappropriate in this case.

Debtors are essentially attempting to achieve through conversion to a Chapter 7 case that which they could not have achieved had they originally filed under Chapter 7. Such an end run around the *Dewsnup* decision is impermissible. Additionally, if this Court were to permit Debtors to free their property from the GMAC lien by converting, it would provide all Chapter 13 debtors with an incentive to convert the moment the secured portion of the bifurcated claim is paid in full. In many cases, this would be before any payments had been made to unsecured creditors. Such an action would deprive the unsecured creditors of their expected return from the Chapter 13 plan and would promote abuse of the bankruptcy process.[5]

### CONCLUSION

For the foregoing reasons it is accordingly,

ORDERED that the Debtors' Motion for Release of Lien is DENIED. It is further

ORDERED that Debtors' Objection to Claim No. 6 is SUSTAINED only to the extent of GMAC's failure to file a proper proof of claim which lists the amount of its secured claim, for distribution purposes, as

bifurcated claims, § 349(b)(1)(C) would be rendered meaningless. This section serves to reinstate all liens voided under § 506(d) if a case is dismissed. Under the Debtors reading of § 506(d), a Chapter 13 debtor who pays only the secured portion of a bifurcated claim in full and then dismisses under § 1307, effectively relieves himself of all liens because there would be no

the amount of the fair market value of the automobile.

secured debt to which the newly reinstated lien could attach.

5. This identical issue arose in *In re Gammon*, 155 B.R. 15 (W.D.Okla.1993). In that case the district court followed the same reasoning adopted here in denying the debtors motion to redeem collateral. *Id.*, at 17–18.