**In re Thomas COOKE and Patricia Cooke, Debtors.**

**Bankruptcy No. 92–40292–2.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

July 8, 1994.

R. Gregory Gore, Independence, MO, for debtors.

Marilyn S. Gussman, Kansas City, MO, for GMAC.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This matter comes before the Court on the Debtors' Motion to Redeem Tangible Personal Property filed April 25, 1994. General Motors Acceptance Corporation (GMAC) filed an answer to the motion, and the Court held a hearing to consider the issues raised by the parties. Having duly considered the motion and the arguments of counsel, the Court finds as follows:

*Facts*

The facts in this case are not in dispute. The Debtors, Thomas and Patricia Cooke filed for Chapter 13 relief on January 30, 1992. The Debtors financed the purchase of a 1988 Chevrolet Cavalier (the Vehicle) through GMAC. The Debtors scheduled GMAC as secured to the value of the Vehicle and unsecured for any amount beyond that value. GMAC filed a proof of claim in the amount of $8324.98. The fair market value of the Vehicle was determined to be $6012.50, leaving GMAC with an unsecured claim of $2312.48.

The Debtors proposed a Chapter 13 plan in which secured creditors were to be paid in full on their allowed secured claims with interest accruing at 9%. Unsecured claims, including GMAC's unsecured deficiency claim, were to be paid 59% of their allowed amount. The Court confirmed the Debtors' 36 month plan on May 29, 1992.

At the time the original petition was filed, the Debtor, Thomas Cooke, was employed at Sealright as a product designer, and his co-Debtor wife, Patricia Cooke, was employed at John Knox Village as a secretary. The Debtors earned $2,237.22 and $1,160.23 respectively. During late 1993, Debtor Patricia Cooke was hospitalized due to illness. She is now disabled. The Debtors missed two plan payments, and the Chapter 13 Trustee moved to dismiss or convert the case.

On January 24, 1994, this case was converted to a Chapter 7 liquidation. The Chapter 7 schedules demonstrated that the Debtor Thomas Cooke was the sole wage earner in the family, and that the co-Debtor Patricia Cooke was unemployed. Patricia Cooke's unemployment reduced the Debtors' combined income by one-third.

At the time of conversion, the Debtors had paid $6012.50 in principal and $574.06 in interest on GMAC's secured claim. The Chapter 13 Trustee's final report indicated that $0.00 remained on the secured claim. The Debtors also paid $262.10, an 11% dividend, on GMAC's unsecured claim. GMAC filed a new proof of claim in the converted case, listing a $2665.67 secured claim. The parties

agreed that the fair market value of the Vehicle is now $3812.50.

The Debtors filed a motion to redeem personal property, alleging that the Vehicle may be redeemed for $0.00, the balance due on the secured claim in the Chapter 13 proceeding. GMAC filed an answer to the motion, arguing that lien stripping in Chapter 13 does not survive a conversion to Chapter 7. GMAC argued that the Debtors must pay the full amount of the GMAC claim to redeem the Vehicle, or in the alternative, the Debtors must reaffirm the debt.

### Discussion

■ Section 722 allows Chapter 7 debtors to redeem tangible personal property intended primarily for personal, family or household use. 11 U.S.C. § 722. To redeem, a debtor must pay the value of the property or the value of the secured creditor's claim, whichever is less. *Id.* Here, the agreed value of the Vehicle, $3812.50, exceeds the value of the secured claim whether the Court uses the creditor's or the Debtors' figures. Thus, the Debtors' must pay GMAC the value of its secured claim to redeem their automobile. The basic question before this Court is whether GMAC's secured claim was satisfied under the Debtors' Chapter 13 plan, in which case the secured claim is $0.00, or whether the secured claim is $2050.38, the remaining balance on GMAC's claim after the Debtors' Chapter 13 payments are considered.[1]

This Court previously addressed the conversion/redemption issue in *In re Tluscik*, 122 B.R. 728 (Bankr.W.D.Mo.1991). Ironically, the *Tluscik* debtors owned a 1984 Chevrolet Cavalier when they filed for Chapter 13 relief, and the secured creditor was GMAC. *Id.* at 729. The debtors bifurcated GMAC's claim into its secured and unsecured portions, paying all but $135.26 of the secured claim through their Chapter 13 plan. *Id.* The debtors converted the case to Chapter 7 and sought to redeem the automobile

for $135.26. *Id.* This Court determined that:

> it is the Chapter 13 secured value which is determinative and not the secured claim value at the time of conversion.

*Id.* Thus, the debtor was permitted to redeem the collateral by paying only $135.26, the unpaid balance of the secured claim under the Chapter 13 plan. *Id.* This Court refused to allow a second valuation of the secured creditor's claim as of the date of conversion because it would give that creditor "two bites of the same apple." *Id.*

Since this Court rendered *Tluscik*, the Supreme Court decided *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), which arguably affects *Tluscik*'s continued vitality. Recently, Judge Barry Schermer in the Eastern District of Missouri held *Dewsnup* bars lien stripping in a converted case. *In re Jordan*, 164 B.R. 89 (Bankr.E.D.Mo.1994). While recognizing Judge Schermer's excellent analysis of the issue, the Court notes that there is a distinct split of authority on whether a debtor may strip down a lien in Chapter 13, convert to Chapter 7, and void the lien to the extent it is unsecured. *In re Gammon*, 155 B.R. 15, 17 (W.D.Okla.1993). Some courts have found, like Judge Schermer, that such a process violates *Dewsnup*'s absolute prohibition on lien stripping in Chapter 7. *See, e.g., Id.; In re McDonough*, 166 B.R. 9 (Bankr.D.Mass. 1994); *In re Jones*, 152 B.R. 155 (Bankr. E.D.Mich.1993). Other courts have found that no lien stripping occurs when a lien is fully satisfied under chapter 13 and the case is subsequently converted to Chapter 7 because the lien is not revived upon conversion. *See, e.g., In re Lee*, 162 B.R. 217, 226 (D.Minn.1993); *In re Stoddard*, 167 B.R. 98 (Bankr.S.D.Ohio 1994); *In re Peterson*, 163 B.R. 581 (Bankr.D.Idaho 1993); *In re Pickett*, 151 B.R. 471 (Bankr.M.D.Tenn.1992); *In re Murry–Hudson*, 147 B.R. 960 (Bankr. N.D.Cal.1992).

---

1. GMAC filed a claim in the Chapter 13 proceeding for $8324.98. $6012.50 was allowed as secured, and this amount was paid with interest. $2312.48 was allowed as unsecured. Subtracting the $262.10 that GMAC received under the

Chapter 13 plan leaves an allowed balance of $2050.38. The Court does not know how GMAC came up with the $2665.67 figure now requested in the converted case.

Like Hercules battling the Hydra, each time the courts resolve one lien stripping issue, another two grow in its stead. Perhaps it is with the complexities of the present case in mind that Justice Blackmun in *Dewsnup* stated:

Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations.

*Dewsnup v. Timm*, —— U.S. at ——, 112 S.Ct. at 778. Having struggled through its own Labors with this case, the Court finds that *Tluscik* as applied to facts of this case does not violate *Dewsnup*. The Court begins with a review of *Dewsnup*.

### A. Lien Stripping and Dewsnup

■ "Lien stripping" is a process through which a debtor reduces the value of a secured claim to the value of the property. David Epstein, Steve Nickles and James White, 2 Bankruptcy § 7–47 at 441 (1992). Lien stripping can be effected through § 722, and prior to *Dewsnup*, the majority of courts allowed lien stripping through the use of § 506 alone, without resort to § 722. *Id.* § 7–47 at 441 n. 2 and cases cited therein. Section 506 provides in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

11 U.S.C. § 506(a), (d). Normally, Chapter 7 trustees abandon property which is overencumbered because such property has no value to the estate. 2 Bankruptcy § 7–47 at 441. Using the § 506 lien stripping powers, debtors lien stripped abandoned property, retained possession of the property by curing defaults and owed the secured creditor only the value of the property. *See In re Zlogar,*

101 B.R. 1, 3–10 (Bankr.N.D.Ill.1989) (and cases cited therein), *aff'd*, 126 B.R. 53 (N.D.Ill.1991).

In *Dewsnup*, the Supreme Court held that § 506(d) did not void a secured creditors lien in chapter 7. *Dewsnup v. Timm*, —— U.S. at ——, 112 S.Ct. at 778. In *Dewsnup*, the debtor borrowed $119,000 to finance the purchase of farmland which was valued at $39,000 in the bankruptcy proceedings. *Id.* at ——, 112 S.Ct. at 776. The debtor filed an adversary proceeding to bifurcate the mortgagee's claim into a secured and unsecured portion pursuant to § 506(a) and avoid the unsecured portion pursuant to § 506(d). *Id.* The lower courts refused to void the mortgage lender's lien on the property, and the Supreme Court affirmed. *Id.* The Supreme Court believed that the practical effect of the debtor's proposal would be:

to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor, a result some of the parties describe as a "windfall."

*Id.* at ——, 112 S.Ct. at 778. The Supreme Court assigned a different meaning to the phrase "allowed secured claim" as used it is used in § 506(a) from the meaning of the phrase as it is used in § 506(d). *Id.* The Supreme Court stated:

The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.* at ——, 112 S.Ct. at 778.

The Supreme Court did not address the ability of debtors to "lien strip" under other Code chapters, specifically distinguishing reorganization chapters. *Id.* at ——, 112 S.Ct. at 779. Moreover, the case did not address

the "lien stripping" aspects of § 722. *See generally id.* at ——, 112 S.Ct. at 776–77.

The Supreme Court also addressed lien stripping in the Chapter 13 context in *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). *Nobelman* involved a secured creditor whose claim was secured only by the debtor's principal residence. *Id.* at ——, 113 S.Ct. at 2108. The debtor proposed a Chapter 13 plan that would bifurcate the mortgage into a secured claim and an "effectively worthless unsecured claim." *Id.* at ——, 113 S.Ct. at 2109. Rather than focus on the language of § 506, the Supreme Court relied on the plain language of § 1322(b)(2) to prohibit lien stripping of home mortgages in Chapter 13. *Id.* at ——, 113 S.Ct. at 2111. Section 1322(b)(2) provides that a Chapter 13 plan may:

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of an class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added). The "other than" provision prevented lien stripping in *Nobelman. See* at ——, 113 S.Ct. at 2108.

*Nobelman* did not prohibit all lien stripping in Chapter 13, nor did the Supreme Court refer to *Dewsnup* in *Nobelman. See generally id.* The plain language of § 1322(b) indicates that a debtor may lien strip a creditor's lien when that lien is in something other than the debtor's principal residence. *In re Lee,* 162 B.R. at 222; *see also In re Murry–Hudson,* 147 B.R. 960 (Chapter 13 lien stripping on automobile).

### B. Lien Stripping and Conversion

█ Courts have split on the issue of whether a debtor may bifurcate a secured claim in Chapter 13, satisfy the claim under Chapter 13 and then convert to a Chapter 7 to discharge the remaining unsecured portion of the claim. *See In re Lee,* 162 B.R. 217, 226 (lien stripping survives conversion); *In re Stoddard,* 167 B.R. 98 (lien stripping survives conversion); *In re Peterson,* 163 B.R. 581 (lien stripping survives conversion); *In re Pickett,* 151 B.R. 471 (lien stripping survives conversion); *In re Murry–Hudson,* 147 B.R. 960 (lien stripping survives conversion). *But see In re Gammon,* 155 B.R. 15, 17 (lien stripping through conversion prohibited); *In re Jordan,* 164 B.R. 89 (lien stripping through conversion prohibited); *In re McDonough,* 166 B.R. 9 (lien stripping through conversion prohibited); *In re Jones,* 152 B.R. 155 (lien stripping through conversion prohibited). Those courts that allow Chapter 13 lien stripping to survive conversion to Chapter 7 do so for two reasons. First, courts have held that valuation for redemption purposes relates back to the original filing of the petition. *See In re Stoddard,* 167 B.R. 98, 100–01. At the point of redemption, the claim must be bifurcated using the values of the claim as of the petition date, with all Chapter 13 payments credited towards redemption. *Id.* at 101. *Dewsnup* is not violated under this theory because the lien stripping occurs under § 722 not the prohibited § 506(d). The debtor need only pay the remaining balance of the secured claim to complete the redemption. *Id.; see Tluscik,* 122 B.R. at 729. Second, courts have held that the secured claim is extinguished in the Chapter 13 case upon completion of payments on that claim under the plan. The lien is not revived upon conversion. *See In re Peterson,* 163 B.R. at 584; *In re Pickett,* 151 B.R. at 474; *In re Lee,* 162 B.R. at 225; *In re Murry–Hudson,* 147 B.R. at 962–63. Thus, there is no lien to strip in Chapter 7. *In re Pickett,* 151 B.R. at 474.

Those courts that have refused to permit Chapter 13 lien stripping to carry over into converted Chapter 7 cases also have espoused two justifications. First, conversion relates back to the original filing of the petition. 11 U.S.C. § 348(a). Thus, a converted Chapter 7 is treated as if the case had originally been filed as a Chapter 7 wherein lien stripping is prohibited by *Dewsnup. See In re Jordan,* 164 B.R. at 91; *In re Dennis,* 31 B.R. at 130. Second, allowing a debtor to lien strip in Chapter 13 and then convert upon satisfaction of secured claims would be an "end run" around *Dewsnup* that is ripe for abuse. *In re Gammon,* 155 B.R. at 17;

*In re Jordan,* 164 B.R. at 91; *In re Jones,* 152 B.R. at 181.

The two positions are irreconcilable. The Court sides with those cases permitting the lien stripping in Chapter 13 to "carry over" into the converted case. The Court considers that position to be the more defensible position under both the redemption theory and the lien theory. First, the Court has already adopted the redemption theory. *See Tluscik,* 122 B.R. at 729. Principles of stare decisis bind the Court, and this theory has the advantage of avoiding conflict with *Dewsnup* because the lien strip occurs via § 722 not § 506(d). Moreover, the policy reasons stated in *Tluscik* hold true even after *Dewsnup.* A secured creditor may have only one bite at the apple. *Id.* Once the value of a secured claim has been determined in the Chapter 13 case, the creditor may not better its position by the conversion of the case to Chapter 7.

Here, the judicially determined value of the secured creditor's claim was $6012.50. For the Debtors' to redeem the Vehicle, they must tender $6012.50 to GMAC. GMAC realized this amount through the Chapter 13 plan. GMAC's reading of the Code would allow it to also recover its unsecured deficiency in full as a secured claim because of the conversion. This reading strains the meaning of § 722. It would unduly limit the Debtors' ability to redeem collateral, and it would provide a windfall to the creditor never intended by the Code.

▮ In the Western District, it has recently been held that a debtor must redeem collateral with a lump sum payment, rather than through installment payments. *In re Tucker,* 158 B.R. 150 (Bankr.W.D.Mo.1993), citing *In re Edwards,* 901 F.2d 1383 (7th Cir.1990); *In re Bell,* 700 F.2d 1053 (6th Cir.1983). Installment redemption has been rejected because such a process undermines a creditor's right to negotiate a reaffirmation agreement under § 524(c) and imposes upon a creditor an involuntary payment plan that the court is improperly equipped to monitor or enforce. *In re Bell,* 700 F.2d at 1056. Further, the structure of the Code suggests that installment redemption should be prohibited in Chapter 7 because installment re-

demption is available under Chapter 13 which has the appropriate mechanisms to protect and enforce creditor rights. *Id.* at 1057. Thus, the "lump sum" rule encourages debtors to file for Chapter 13 to reap the benefits of installment redemption. Arguably, the "lump sum" rule would preclude debtors in a converted case to redeem for the stripped down value because the payment plan in Chapter 13 would have been an impermissible Chapter 7 installment redemption. *See In re Gammon,* 155 B.R. at 17. However, the "lump sum" rule is silent on the effects of conversion on redemption. The pre-conversion installment payments would be subject to all the provisions of Chapter 13. A bankruptcy court could fully enforce the provisions of the chapter to monitor and enforce such "installment plans". In a converted case, the installment redemption would occur within the parameters of the Chapter 13. A court cannot ignore the fact that a converted case existed under another chapter of the Code, nor does conversion nullify all pre-conversion events. *In re Pickett,* 151 B.R. at 474. Recognizing this, the Court finds that crediting Chapter 13 plan payments to a Chapter 7 redemption upon conversion does not violate the "lump sum" rule. However, a debtor may not continue to make installment payments after conversion. Once converted, a debtor must pay the balance of a secured claim as determined in Chapter 13, in a lump sum, to redeem.

Here, the Debtors paid the full amount of the secured claim under the Chapter 13 plan with interest. The remaining balance was $0.00. The Chapter 13 payments will be credited towards redemption, and this credit will be treated as a lump sum.

The second theory, the lien extinguishment theory, also supports the Court's conclusion that the Debtors may redeem their property for the $0.00 remaining on the secured claim. Courts have generally found that the payment of a secured claim through a Chapter 13 plan extinguishes the lien. *In re Pickett,* 151 B.R. at 473. Chapter 13 effects "lien stripping" as a "matter of law" when the lien is not on the debtor's principal residence. *In re Lee,* 162 B.R. at 220–22. The legislative history of § 1325 supports this reading:

the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditors' secured claim the creditors' lien will have been satisfied in full.

124 Cong.Rec. 32,410 (statements of Rep. Edwards), reprinted in 1978 U.S.C.A. 5787, 6436, 6482; 124 Cong.Rec. 34,009 (statements of Sen. DeConcini), reprinted in 1978 U.S.C.A. 6505, 6551.

■ Liens are not revived upon conversion. See 11 U.S.C. § 348. While § 348 relates conversion back to the original petition date, this does not mean that all events that occurred in the Chapter 13 case are nullified. In re Pickett, 151 B.R. at 474, quoting In re Hargis, 103 B.R. 912, 915–16 (Bankr.E.D.Tenn.1989). One such event is lien satisfaction. The Code provides for the revival of a lien upon dismissal of a case, see 11 U.S.C. § 349(b)(1)(C); however, the conversion section does not similarly provide, compare 11 U.S.C. § 348. Courts generally agree that liens satisfied in Chapter 13 are not revived upon conversion to a Chapter 7. See In re Stoddard, 167 B.R. 98, 101 (post-Dewsnup); In re Peterson, 163, B.R. at 583; In re Lee, 162 B.R. at 221 (post-Dewsnup); In re Jones, 152 at 182 (post-Dewsnup); In re Pickett, 151 B.R. at 471 (post-Dewsnup); In re Murry–Hudson, 147 B.R. at 963 (post-Dewsnup); In re Bunn, 128 B.R. 281, 284 (Bankr.D.Idaho 1991) (pre-Dewsnup); In re Tluscik, 122 B.R. at 729–30 (pre-Dewsnup); In re Hargis, 103 B.R. 912, 915 (Bankr. E.D.Tenn.1989) (pre-Dewsnup); In re Estep, 96 B.R. 87, 88–89 (Bankr.E.D.Ky.1988) (pre-Dewsnup); In re Tunget, 96 B.R. 89, 89 (Bankr.W.D.Ky.1988) (pre-Dewsnup). But see In re Jordan, 164 B.R. at 92 (post-Dewsnup); In re McDonough, 166 B.R. at 14 (post-Dewsnup); In re Dennis, 31 B.R. 128, 131 (Bankr.M.D.Ga.1983) (pre-Dewsnup). On the facts before the Court, the Debtors satisfied GMAC's claim under the Chapter 13 plan by paying $6012.50 plus interest. No lien carried over into Chapter 7 upon conversion.

Those courts which treat the case as originally filed as a chapter 7 and reject the lien stripping that occurred in Chapter 13 side step the lien satisfaction/revival issue, stating simply that Dewsnup is an absolute prohibition on lien stripping in Chapter 7. See, e.g., In re McDonough, 166 B.R. at 14. The liens satisfied under the Chapter 13 plan do not magically reappear, like Athena springing fully grown from the head of Zeus. The text of the Code does not support this view. Rather, those liens are extinguished; they are not revived upon conversion, and Dewsnup is not offended because no lien exists upon conversion to be stripped down. Any lien stripping that has occurred has been fully completed within the context of the Chapter 13 portion of the case where such practice is explicitly authorized by § 1322.

Those courts which refuse to carry over the Chapter 13 lien stripping to the converted Chapter 7 case are driven by policy concerns. They believe that permitting lien stripping to survive conversion would encourage debtors to file Chapter 13, pay the allowed secured claims, immediately convert to Chapter 7, and discharge the remaining unsecured portion. See, e.g., In re Gammon, 155 B.R. at 17; In re Jordan, 164 B.R. at 92. This "end run" around Dewsnup, the courts argue, should be prevented. The court in In re Murry–Hudson, 147 B.R. at 962–64, rejected a similar argument, finding that the Chapter 13 plan confirmation process provided procedural protections to a secured creditor. The Murry–Hudson court found that § 1325 adequately protected creditors by requiring debtors to propose a plan in good faith, § 1325(a)(3), that is in the best interest of the creditors, § 1325(a), and is feasible, § 1325(a)(6). Id. at 963. Should these protections be insufficient to prevent a debtor from converting, a court could resort to § 707(b) to police unscrupulous debtors. Id. at 964. A § 707(b) dismissal would revive any liens avoided in a plot to abuse the bankruptcy process. See 11 U.S.C. § 349(b)(1)(C).[2] The Court believes that

---

2. One court has analyzed Murry–Hudson and concluded that the protections afforded by the Code in a converted case are illusory. See In re Jones, 152 B.R. at 181–82. The Jones court

found that aggressively pursuing small deficiency claims in bankruptcy would be too costly for creditors. Id. Consequently, creditors would not police debtors, and debtors would be free to

creditors are adequately protected by these Code provisions.

 In the case at hand, no abuse is present. The Debtors did not rush to convert the case upon satisfaction of GMAC's secured claim. In fact, the Debtors continued to pay under the plan, providing the unsecured creditors an 11% dividend. The Debtors stayed in Chapter 13 for nearly two years. Health problems incurred by one of the co-Debtors resulted in her unemployment and a 33% reduction in household income. This appears to be the real reason justifying conversion. Consequently, the Debtors fell two payments behind on their Chapter 13 plan, and the Chapter 13 Trustee moved to convert the case. There appears to be no evil motive in this conversion, and the Court will not punish honest debtors for hypothetical abuses that may potentially occur at some unspecified time in the future.

### Conclusion

Based on the above discussion, the Debtors Motion to Redeem Tangible Personal Property is hereby GRANTED. It is further ORDERED that GMAC shall turn over the certificate of title for the vehicle described as a 1988 Chevrolet Cavalier, VIN 1G1JF11W3JJ245519 to the Debtors. Said certificate of title shall be free and clear of GMAC's liens.

The foregoing Memorandum Opinion constitutes Findings of Facts and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.

---

abuse the bankruptcy system. *Id.* The Court disagrees. While in Chapter 13, the Chapter 13 Trustee monitors debtors for compliance with the Code. Routinely, the Chapter 13 Trustee will move to dismiss or convert a case when the requirements of Chapter 13 are not met. More-

over, once a case is converted to Chapter 7, the Court may raise the substantial abuse issue sua sponte. *See* 11 U.S.C. § 707(b). The creditors do not directly bear the costs of the Chapter 13 Trustee's activities or those of the Court.