In re John Lee **ARCHIE**, Queen Ester Archie, Debtors.

Bankruptcy No. 94–10004–MAM–7.

United States Bankruptcy Court, S.D. Alabama, Southern Division.

June 2, 1999.

Robert C. Wilson, Mobile, AL, for debtors.

Russell S. Terry, Mobile, AL, for Apex Finance Company.

### *AMENDED ORDER AND JUDGMENT GRANTING DEBTORS MOTION TO REOPEN THEIR CASE AND REDEEM THEIR VEHICLE FOR $0.00*

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the motion of John Lee Archie and Queen Ester Archie (debtors) to reopen their bankruptcy case and for an order requiring Apex Finance Company (Apex) to turn over title to their vehicle. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. This order amends the previous order dated May 10, 1999. Upon further review the Court realized that it was not clear whether Apex was paid interest on its secured claim in debtors' chapter 13 plan. For the reasons indicated below, the motion of debtors to reopen their case is granted and the mo-

tion to redeem their 1987 Cadillac Deville pursuant to 11 U.S.C. § 722 is granted.

### FACTS

Debtors filed for relief pursuant to chapter 13 of the Bankruptcy Code on January 3, 1994. Prior to filing, the debtors had financed the purchase of a 1987 Cadillac Deville through Apex.

During debtors' chapter 13 case, debtors and Apex stipulated that the value of the Cadillac was $7,000. Apex filed a split claim totaling $9,873.10. Thus, Apex had a secured claim in the amount of $7,000 and an unsecured claim in the amount of $2,873.10. In debtors' chapter 13 plan, Apex received a $200 monthly preference payment to cover its $7,000 secured claim and an unsecured claim to be paid 70% of the allowed amount. The plan was confirmed on March 15, 1994.[1]

On September 17, 1997, debtors converted their case to a chapter 7 liquidation. During the chapter 13 phase of the case, Apex received the entire amount of its secured claim without interest ($7,000) and approximately 60% of its unsecured claim ($1,719.44). Debtors received a chapter 7 discharge on January 14, 1998. The 1987 Cadillac was listed in debtors' chapter 7 schedules and it was not administered by the trustee.

### PROCEDURE

■ In this contested matter, debtors moved to reopen their case and for an order requiring Apex Finance to turn over title to debtors' vehicle. A hearing was held on April 27, 1999. The motion to reopen was not contested. Apex Finance appeared and provided argument in support of its opposition to the motion of debtors for an order requiring turnover of the title to their vehicle. Notwithstanding that debtors did not explicitly move to redeem their vehicle until the April 27,

1999 hearing, the Court deems their motion for turnover to include a request to redeem their vehicle. Determining in this opinion whether debtors may redeem their vehicle is proper for the following reasons: (1) Apex received sufficient notice of this hearing and its substance and, consequently, due process concerns have been satisfied; (2) none of the parties are prejudiced by the Court's determination of these issues because at the hearing on this matter they both addressed the redemption issue; (3) a determination of these issues is a more efficient use of the judicial system, rather than requiring debtors to file a separate motion to redeem; (4) the principal issues are closely related and this determination avoids duplication of efforts; and (5) the parties have participated in these proceedings without objection. *T.G. Motors, Inc. of Houston v. C.M. Turtur Investments, Inc. (In re C.M. Turtur Investments, Inc.)*, 93 B.R. 526, 528 (Bankr. S.D.Tex.1988).

### LAW

Debtors presented two alternative arguments in the hope of obtaining title to their vehicle. First, they contend that the lien of Apex was satisfied during debtors' chapter 13 case and Apex must therefore turn over title to the vehicle. Second, they contend that they can redeem their vehicle for $0.00 because the allowed secured claim of Apex was fully paid during debtors' chapter 13 case. The Court will address each argument in the discussion that follows.

#### A.

■ Payment of the entire amount of Apex's secured claim during debtors' chapter 13 plan does not by itself require Apex to release its lien. In essence, a chapter 13 plan is a contract between a debtor and its creditors. This contract

---

1. The amount of Apex's secured claim was amended from $5,000 to $7,000 on May 9, 1994. The $200 preference payment to Apex in the confirmed plan did not indicate whether or not interest was included in the $7,000 amount. There was no objection raised to the language of the plan or confirmation order.

permits a debtor to extend and adjust its debts. If a debtor fails to fulfill its promise under the plan and make all of the proposed payments, then it is not afforded the benefit a chapter 13 discharge. Even if a debtor pays the entire amount of a secured claim, the secured claimant cannot be required to release its lien until the debtor has completed its chapter 13 plan. *In re Jones,* 152 B.R. 155 (Bankr. E.D.Mich.1993) (chapter 13 debtors may not invalidate liens until plan completed and discharge granted); *In re Holiday,* No. 91–10426, 1993 WL 733165, *1–2 (Bankr.S.D.Ga., Mar. 29, 1993) (chapter 13 debtor cannot obtain release of lien until plan completed); *but see, In re Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal. 1992) (chapter 13 debtor permitted to hold property free and clear of liens after paying secured portion). To hold otherwise would deprive creditors of the one protection they have in an uncompleted chapter 13 case, i.e., their lien, before receiving the full benefit of their bargain (if the chapter 13 plan was consensual) or the full benefit of the court ordered plan (if not consensual). Therefore, the Court holds that Apex is not required to turn over title to debtors' vehicle based solely on the payment of its allowed secured claim during debtors' chapter 13 case.

The efforts debtors made during their chapter 13 case are not a nullity, notwithstanding their failure to fulfill their part of the bargain and complete their chapter 13 plan. A creditor cannot pretend that payments on its secured claim were not made if a chapter 13 case is dismissed for nonpayment or converted to a chapter 7. The payments made must be applied in some manner to reduce the remaining balance of the claims of debtors' creditors. If such payments are not applied, then creditors could recover twice for the same debt. Accordingly, the other question in this case is the manner in which these payments should be applied to the debt and how they affect redemption. This issue is discussed below.

### B.

▮ A debtor may redeem tangible personal property intended primarily for personal, family or household use if such property has been abandoned by the chapter 7 trustee. 11 U.S.C. § 722. In this case, the debtors' Cadillac was not administered by the trustee and it is therefore deemed to have been abandoned. 11 U.S.C. § 554(c). To redeem, debtors must pay the lesser of the amount of the allowed secured claim, i.e., the value of the collateral, or the amount of the claim. 11 U.S.C. § 722.

The jurisprudence is split on the issue of the extent to which chapter 13 payments can be credited toward the amount necessary to redeem collateral and whether the valuation of the amount of the allowed secured claim for purposes of redemption is the same as the value set during debtors' chapter 13 plan. *Compare Liberty Nat'l Bank and Trust Co. of Louisville v. Burba (In re Burba),* No. 93–6479, 1994 WL 709314 (6th Cir., Nov. 10, 1994) (unpublished opinion) (upon conversion to chapter 7, collateral can be redeemed only upon payment of current value of collateral or remainder of debt); *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980) (actions taken under chapter XIII do not survive when debtors fail to comply with chapter XIII plan and convert to chapter VII); *In re Gammon,* 155 B.R. 15 (W.D.Okla.1993); *In re Jordan,* 164 B.R. 89 (Bankr.E.D.Mo.1994) (despite full payment of allowed secured claim during chapter 13 case, debtors not entitled to release of lien after conversion to chapter 7); *with In re Lee,* 162 B.R. 217 (D.Minn.1993) (fully satisfied lien is not revived upon conversion from chapter 13 to chapter 7); *In re Cooke,* 169 B.R. 662 (Bankr.W.D.Mo.1994) (after conversion from chapter 13 to chapter 7, debtors could redeem vehicle for balance due on secured claim in the chapter 13 proceeding); *In re Stoddard,* 167 B.R. 98 (Bankr. S.D.Ohio 1994) (following conversion to

chapter 7, debtors permitted to redeem vehicle without any additional payments because allowed secured claim was fully paid during chapter 13 case); *In re Hargis,* 103 B.R. 912 (Bankr.E.D.Tenn.1989). Generally, these courts relied upon broad policy concerns rather than the language of the Bankruptcy Code. This is understandable since prior to the 1994 amendments, the Code did not provide a specific answer on the effect of a conversion on the valuation of collateral and debtors' right to redeem such collateral.

■ It is the opinion of this Court, after considering the language of the Code and its underlying policy, that: (1) upon conversion from chapter 13 to chapter 7, the original valuation governs the amount of allowed secured claims; and (2) the amount necessary to pay the allowed secured claim for purposes of redemption must be reduced by the amount paid on such claim during the preconversion chapter 13 case. Since the 1994 addition of § 348(f)(1)(B) to the Code, no court has published an opinion addressing this issue. *See generally, In re Pearson,* 214 B.R. 156, 165–166 (Bankr.N.D.Ohio 1997) (in dicta, court stated that if lien were subject to redemption in chapter 7, then debtor could have redeemed property with no additional payment upon conversion from chapter 13 to chapter 7 based on new § 348(f)(1)(B)). Below, the Court will discuss how the Bankruptcy Code supports this decision, and the arguments presented by Apex and creditors in other cases.

1.

■ Subsection (f) was added to 11 U.S.C. § 348 as part of the Bankruptcy Reform Act of 1994. The amendment applies prospectively to cases commenced on or after October 22, 1994. 3 COLLIER ON BANKRUPTCY ¶ 348.07 (15th ed.1998). This case was commenced on January 4, 1994, prior to the effective date of § 348(f). Nonetheless, the Court believes that an examination of subsection (f) is important because this 1994 amendment was intended to "clarify the Code," rather than change it. H.R. 5116, 140 Cong.Rec. H10,-770 (daily ed. October 4, 1994).

Section 348(f) provides that:

(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

*(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.*

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f) (emphasis added). According to § 348(f)(1)(B), the amount of an "allowed secured claim" in a case converted to chapter 7 is the same as the amount of the claim established in the preconversion chapter 13 case. Section 722 explicitly permits redemption by payment to the lien holder the amount of the "allowed secured claim." The final clause in § 348(f)(1)(B) reduces the "allowed secured claim" in converted chapter 7 cases by amounts paid toward such claim during the preconversion chapter 13 case. Therefore, the amount necessary to redeem pursuant to § 722 is reduced by the amount paid toward the "allowed secured claim" during the preconversion chapter 13 case. The treatises on bankruptcy law support this reading. *See,* 3 COLLIER ¶ 348.07[4] (in the 1994 amendments, Congress rejected decisions that held that debtors seeking

to redeem in a converted case had to pay the full value of the property even though they had made payments on the allowed secured claim in the chapter 13 case); 5 NORTON BANKRUPTCY LAW AND PRACTICE § 125:3 (2d ed. 1996 & Supp.1999) (when a secured claim is fully paid under chapter 13 plan prior to conversion, debtor may redeem in chapter 7 for $0.00). Basically, for purposes of the payment of an allowed secured claim, the converted chapter 7 case is a continuation of the preconversion chapter 13 case. 6 COLLIER ¶ 722.05[1].

Thus, the Bankruptcy Reform Act of 1994 clearly indicates that the valuation established in the preconversion chapter 13 case applies in the converted chapter 7 case and that payments made toward a secured claim during a chapter 13 case reduce the amount necessary to redeem the collateral upon conversion to chapter 7. The Court maintains that this was the intended result of the Bankruptcy Code even before the 1994 amendments and that it therefore applies to this case. *See supra*, H.R. 5116 ("This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7"); *In re Cooke*, 169 B.R. at 666 (valuation for redemption purposes relates back to the filing of original petition; chapter 13 payments must be credited towards redemption) (cites omitted). This conclusion becomes more apparent after examining the arguments advanced by Apex and creditors in other cases.

### 2.

Apex contends that the result reached by this Court will enable debtors to redeem collateral through installment payments. This contravenes the requirement that redemption be made in a lump sum, unless the creditor agrees otherwise. *Edwards v. Merchants Nat'l Bank*, 95 B.R. 97 (S.D.Ind.1988), *aff'd*, 901 F.2d 1383 (7th Cir.1990). Similarly, creditors have argued that permitting conversion to chapter 7 and redemption for the amount remaining on the chapter 13 allowed secured claim denies creditors the benefit they were to receive under the chapter 13 plan. *In re Burba*, 1994 WL 709314, at *3. Arguably, Apex agreed to the chapter 13 valuation based on the belief that it would receive a set percentage payment of its unsecured claim in addition to full payment of its secured claim in installments. Once the debtors converted to chapter 7, Apex lost the benefit of its bargain (payments on unsecured claim) despite having already lived up to its part of the deal (agreeing to installment payments, rather than foreclosure). Thus, upon conversion, Apex believes that debtors can only redeem by paying the current value of the collateral or the remainder of the debt, whichever is less.

However, these creditor arguments do not provide the full picture. First, during debtors' chapter 13 plan, Apex was paid the full amount of its allowed secured claim, $7,000. As stated in footnote one, the order valuing the claim and confirming the plan are not clear as to whether any amount of the $7,000 covers interest. If any of $7,000 is interest, the interest paid accounts for the time-value of money and provides Apex approximately the same amount it would have received had debtors originally filed chapter 7 and redeemed the collateral. If the $7,000 represents only the value of the collateral, then Apex had a right to object to the plan on the basis that the plan was not paying its claim appropriately under 11 U.S.C. § 1325. Apex was not receiving the present value of collateral valued at $7,000 without interest being paid. Apex did not object so the order is final and, for purposes of this ruling, Apex has been paid its full value based upon what the plan provided.

Apex also received approximately 60% of its unsecured claim. If debtors originally filed chapter 7 rather than trying to reorganize under chapter 13, Apex likely would have received little, if any, dividend on its unsecured claim. Thus, Apex is not

harmed; it benefits from the installment redemption in this case.

Applying the collateral value established in the chapter 13 in the converted chapter 7 case will benefit creditors in some cases. Automobiles usually depreciate over time. Therefore, upon conversion to chapter 7, the value of an automobile lender's collateral, and as a corollary the amount of its allowed secured claim, will probably be less than when the original chapter 13 was filed. Locking in the allowed secured claim at the initial chapter 13 value deprives converting debtors of the ability to redeem vehicles after deducting depreciation from the vehicle's value.

■ If payments made during chapter 13 plans are not credited toward the amount necessary to redeem upon conversion to chapter 7, then creditors will receive a double recovery. Obviously, this is not fair. If the alternative is to require converting debtors to pay the full value of the secured creditor's claim in order to redeem, then debtors would be denied their right to redeem items covered by § 722. This Court believes that Congress did not intend to deny honest but unfortunate debtors the right to redeem personal, family, or household goods solely because the debtors were unable to complete their chapter 13 payments. *See,* S.Rep.No. 95–989, 95th Cong. 2nd Sess. 95, 127 (1978) U.S.Code Cong. & Admin. News 1978 at pp. 5881, 5913 (redemption provision intended to prevent creditors from obtaining oppressive reaffirmations based on threat of foreclosure on personal, family, or household items).

### 3.

Apex also contends that adopting debtors' view will provide an incentive for debtors to abuse the protections afforded them under the Bankruptcy Code and it will provide a mechanism to circumvent the prohibition against lien stripping in chapter 7 cases. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (chapter 7 debtors cannot "strip down" lien on real property to judicially determined value of collateral). According to Apex, debtors will file chapter 13, make payments sufficient to satisfy the amount of a creditor's allowed secured claim, convert to chapter 7 and discharge the remaining unsecured portion of the creditor's claim.

The Court believes that the Bankruptcy Code provides sufficient methods to deal with bad faith bankruptcy filings, conversions or redemption requests. For example, a case can be dismissed for "cause" which could include a bad faith conversion. 11 U.S.C. § 707(a). The Court can dismiss a chapter 7 case filed by a consumer if permitting it to go forward would be a "substantial abuse." 11 U.S.C. § 707(b). A chapter 13 plan cannot be confirmed unless proposed in good faith. 11 U.S.C. § 1325(a)(3); *see also,* § 348(f)(2) (debtor must relinquish property it accumulates after initial filing and before conversion to the bankruptcy estate if debtor converted in bad faith). In this case, debtors paid 60% of Apex's unsecured claim before converting to chapter 7 (debtors' confirmed plan proposed to pay creditors 70% of their unsecured claims). Based on this and the absence of any evidence of bad faith on the part of debtors, the Court finds that debtors did not file their chapter 13 plan in bad faith or abuse the bankruptcy system.

Adopting the view of Apex might impair the goals of the Bankruptcy Code. It would discourage debtors' from filing chapter 13 and attempting to pay their debts over time from future income. This disincentive will arise because debtors will be counseled that if they fail to complete their chapter 13 plan, any payments they make toward secured claims will not reduce the amount necessary to redeem pursuant to § 722. Based on the provisions of the Bankruptcy Code granting debtors broader relief in chapter 13 versus chapter 7 and the current limits on chapter 7 being discussed in Congress, the Court is comfortable concluding that the Bankruptcy Code was meant to encourage income earners

with financial problems to attempt chapter 13 rather than filing chapter 7 as a first resort. *Compare* 11 U.S.C. §§ 727 and 1328 (chapter 13 discharge is broader than chapter 7's); *see,* The Bankruptcy Reform Act of 1999, H.R.833, introduced Feb. 24, 1999 by Rep. George Gekas (proposing "means-test" for determining if debtors qualify for chapter 7); *In re Pearson,* 214 B.R. at 164 (in legislative history to § 348(f), Congress showed its concern that debtors not be discouraged from filing chapter 13 cases because of their fear of losing benefit of initial chapter 7 filing) (citing H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 42–43 (Oct. 4, 1994); 140 Cong.Rec. H10,770 (Oct. 3, 1994)).

Finally, the decision of this Court does not impinge upon the holding of the Supreme Court in *Dewsnup. Dewsnup* was limited to cases involving real property. *Dewsnup,* 502 U.S. 410, 112 S.Ct. at 778 (court stated that single opinion cannot apply to all possible fact situations and it therefore focused only upon the facts before it). Footnote 3 in the *Dewsnup* case specifically states that "we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.* at n. 3. The collateral at issue here (a vehicle) is personal property. As pointed out earlier in this opinion, personal property such as automobiles and other consumer goods usually depreciate, not appreciate as real estate. In addition, the debtor in *Dewsnup* sought to avoid a lien pursuant to 11 U.S.C. § 506(d). In contrast, the Archies moved to redeem their vehicle pursuant to § 722. Thus, *Dewsnup* is inapplicable.

In sum, the Court holds that: (1) upon conversion from chapter 13 to chapter 7, the original valuation governs the amount of allowed secured claims; and (2) the amount necessary to pay the allowed secured claim for purposes of redemption must be reduced by the amount paid on such claim during the preconversion chapter 13 case.

THEREFORE, IT IS ORDERED AND ADJUDGED:

1. The motion of John Lee Archie and Queen Ester Archie to reopen their bankruptcy case is GRANTED;

2. The motion of John Lee Archie and Queen Ester Archie to redeem their 1987 Cadillac Deville for $0.00 is GRANTED; and

3. Apex Finance Company is ORDERED to turn over title to the vehicle based upon the election of debtors to redeem pursuant to 11 U.S.C. § 722.